**STATE of Minnesota, Respondent,**

v.

**Roxanne Denise BROWN, Appellant.**

**No. C4–91–305.**

Court of Appeals of Minnesota.

Sept. 8, 1992.

Review Granted Oct. 28, 1992.

John M. Stuart, State Public Defender, Scott G. Swanson, Asst. State Public Defender, Minneapolis, for appellant.

Considered and decided by SCHUMACHER, P.J., and KLAPHAKE and DAVIES, JJ.

## OPINION

KLAPHAKE, Judge.

Appellant Roxanne Denise Brown alleged that prosecutorial misconduct denied her a fair trial. This court affirmed the conviction in an unpublished opinion. *State v. Brown*, No. C4–91–305, 1991 WL 271489 (Minn.App. Dec. 24, 1991), *pet. for rev. granted in part, denied in part* (Minn. Feb. 27, 1992). The Minnesota Supreme Court denied Brown's petition for review on all counts addressed in this court's opinion, but remanded the case to this court to decide an additional issue— whether the trial court had prejudicially erred by allowing certain cross-examination questions. We conclude that the trial court prejudicially erred and thus reverse Brown's conviction and remand the case for a new trial.

## FACTS

In September 1989, a two-year-old child was rushed to the hospital after her mother, appellant Roxanne Brown, called 911 for emergency assistance. When the ambulance arrived, the child was unresponsive and very near death. Doctors at Monticello–Big Lake Hospital and later at Minneapolis Children's Hospital diagnosed major bruising throughout the child's body, lacerations, collapsed veins due to lack of cardiovascular fluids, and a completely transected duodenum which required immediate surgery. According to Dr. Steven Kurachek, the duodenum injury was life-threatening and could not have occurred more than 48 hours before the emergency procedures.

Deputy Sheriff Gary Reitan investigated the assault. He initially spoke with Brown and her live-in boyfriend, Kurt Kluever, who both stated the child had been injured by falling out of bed onto a plastic toy.

Hubert H. Humphrey III, Atty. Gen., Robert A. Stanich, Sp. Asst. Atty. Gen., St. Paul, Wyman A. Nelson, Wright County Atty., Buffalo, for respondent.

After Reitan told Brown and Kluever that Dr. Kurachek had discounted their explanation for the injuries, Kluever admitted to injuring the child and was arrested.

The child was placed in foster care under county protection while she recovered. The court directed Brown to undergo psychological and chemical dependency evaluations before she could visit the child. Brown did not submit to the evaluations and did not visit the child based upon the advice of an attorney who represented Brown's family on some civil matters. The attorney advised Brown not to submit to the evaluations because they might incriminate her if charges were brought against her stemming from the assault.

On February 16, 1990, just before Kluever's trial was to begin, Brown gave a statement to Reitan. Reitan did not immediately arrest Brown, but read her the *Miranda* warning before taking her statement. Brown admitted responsibility for the child's injuries, stating she could not let Kluever take the blame for what she had done. Brown said Kluever had taken the blame because she was pregnant with his baby and he did not want the baby taken from her. Brown also told several family members she had injured the child.

Brown testified at Kluever's trial, incriminating herself. Brown stated that after she took lysergic acid diethylamide (LSD), she became frustrated with the child and hit her twice. She testified Kluever took the blame because she was pregnant, and stated there was "no doubt" in her mind that she was responsible for the child's injuries. Kluever was acquitted, and Brown was arrested and charged with the crime.

At trial, Brown testified on her own behalf. Brown testified Kluever began to abuse her physically just before his trial. She stated that she perjured herself at Kluever's trial because Kluever threatened to leave, and she hoped her testimony would exculpate him and convince him to stay with her. Brown testified she had not assaulted the child, but that Kluever must have, and stated she was asleep during the assault. Brown also testified Kluever told her the child had fallen out of bed onto a toy.

At the conclusion of Brown's direct testimony, the following exchange took place:

Q: Do you love your child?

A: Yes, very much.

Q: Would you ever do anything like that to her?

A: No.

Believing this testimony "opened the door wide" as to Brown's feelings and actions toward the child, the prosecutor cross-examined Brown about her behavior towards the child after the assault. Defense counsel objected to questions about Brown's failure to visit the child in foster care. After a discussion of the matter out of the presence of the jury, during which it was apparent that Brown did not visit the child as a consequence of following advice of counsel, the court allowed the following cross-examination:

Q: Have you visited with [the child] since she has been in foster care, in the custody of Wright County Human Services?

A: Since she has been in foster care I have not seen her.

Q: Why is it that you have not seen her?

A: Because I had psychological and chemical dependency evaluations that I had to do before I could have visitation with her.

Q: And you have not had those * * * evaluations, have you?

A: No.

Q: And why not?

A: It was—I was under—advised by my lawyer not to have them because in my criminal case that was regarded to—this could be held against me in court.

The jury returned a guilty verdict and Brown appealed, alleging that prosecutorial misconduct denied her a fair trial. Attempting to establish the cumulative effect of many instances of prosecutorial misconduct, Brown categorized the above-refer-

enced questions as prosecutorial misconduct.

This court reasoned that the cross-examination questions did not constitute misconduct because the prosecutor disclosed to the court what she wished to ask Brown, and the trial court allowed her to ask about the evaluations. *State v. Brown*, No. C4–91–305, 1991 WL 271489 (Minn.App. Dec. 24, 1991), *pet. for rev. granted in part, denied in part* (Minn. Feb. 27, 1992). This court also determined that the instances of improper prosecutorial conduct did not mislead the jury where the evidence against Brown, including her confessions, was strong. *Id.*

Brown filed a petition for further review, again alleging only that prosecutorial misconduct had denied her a fair trial. On February 27, 1992, the supreme court issued an order denying her petition "with respect to the issues addressed by the court of appeals in its opinion" but granting her petition

> with respect to the issue raised in the court of appeals but not addressed in its opinion, specifically *whether the trial court prejudicially erred in allowing the prosecutor to cross-examine defendant concerning her failure to visit her daughter and the reasons therefor.*

(Emphasis added). The supreme court remanded the case to this court to decide the issue.

## ISSUE

Did the cross-examination questioning violate Brown's constitutional right against self-incrimination?

## ANALYSIS

In order to properly analyze the alleged violation of Brown's constitutional rights, we must first categorize the objectionable testimony. On cross-examination, the prosecutor elicited testimony about Brown's pre-arrest, pre-*Miranda* silence upon the advice of her counsel. Brown had not yet been charged with any crime arising from the incident, the attorney who advised her to remain silent was retained for assistance on a civil matter, and the questions did not relate directly to the crime charged.

In *Doyle v. Ohio*, 426 U.S. 610, 619, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91 (1976), the United States Supreme Court held that a defendant's silence following the *Miranda* advisory cannot be used for impeachment purposes. The Court reasoned the *Miranda* warning carried an implicit assurance that a defendant's silence "will carry no penalty" and will not be "used to impeach an explanation subsequently offered at trial." *Id.* 426 U.S. at 618, 96 S.Ct. at 2245. The Court has also ruled, however, that a prosecutor may use pre-*Miranda* silence to impeach a defendant's testimony at trial without violating the federal Constitution. *Fletcher v. Weir*, 455 U.S. 603, 607, 102 S.Ct. 1309, 1312, 71 L.Ed.2d 490 (1982); *Jenkins v. Anderson*, 447 U.S. 231, 238, 100 S.Ct. 2124, 2129, 65 L.Ed.2d 86 (1980).

In *Jenkins*, the Supreme Court stated:

> [I]mpeachment follows the defendant's own decision to cast aside his cloak of silence and advances the truth-finding function of the criminal trial. We conclude that the Fifth Amendment is not violated by the use of prearrest silence to impeach a criminal defendant's credibility.

447 U.S. at 238, 100 S.Ct. at 2129. The Court's decision in *Fletcher* went a step further, allowing a defendant's *post*-arrest (but pre-*Miranda*) silence to be used as impeachment evidence. 455 U.S. at 607, 102 S.Ct. at 1312. Although *Jenkins* and *Fletcher* recognized the implicit assurances of the *Miranda* warning, neither case involved a defendant who had remained silent upon the *advice of counsel. See id.* 455 U.S. at 606–07, 102 S.Ct. at 1311–12; *Jenkins*, 447 U.S. at 239–40, 100 S.Ct. at 2130. Therefore, the precise issue raised in this appeal has not been decided by the Supreme Court.

■ While it is uncertain whether Brown's Fifth Amendment right against self-incrimination was violated under current federal law, we believe the Minnesota Constitution, Article I, Section 7 extends her right against self-incrimination beyond minimal federal constitutional guarantees.

The seminal Minnesota case discussing admissibility of counseled, pre-*Miranda* silence as impeachment evidence is *State v. Billups*, 264 N.W.2d 137 (Minn.1978). In *Billups*, the Minnesota Supreme Court analyzed the United States Supreme Court's holding in *Doyle*, and determined no practical difference existed between counsel, pre-*Miranda* silence and post-*Miranda* silence. *Id.* at 139. The court therefore held that using a defendant's counseled silence for impeachment purposes is constitutionally prohibited. *Id.* Regarding counseled silence, the court stated:

> There is probably no greater reason for one given a *Miranda* warning to remain silent as to exculpatory evidence than there is for one who is warned to remain silent by his attorney.

*Id.*

■ Here, the evidence shows Brown asserted her right against self-incrimination when she chose not to submit to the psychological and chemical dependency evaluations prior to being allowed visitation with the child. She asserted this right under the advice of counsel before receiving the *Miranda* warning. Under these circumstances and consistent with *Billups*, we believe the questions asked during cross-examination violated Brown's rights under the Minnesota Constitution.

■ When reviewing constitutional error, we must independently evaluate the evidence to determine whether it was harmless beyond a reasonable doubt. *See State v. Robinson*, 427 N.W.2d 217, 224 (Minn. 1988). In making this determination, we must look to the record as a whole. *Id.*

Although we agree that there was strong evidence against Brown, the improperly elicited testimony was potentially very prejudicial. Brown had not been charged with a crime, yet her attorney advised her not to submit to the evaluations for fear she could incriminate herself. The jury could have inferred that Brown's own attorney believed she was guilty of criminal conduct, even though the police at that time did not. The likelihood that this inference significantly influenced the jury verdict is too real to ignore. Additionally, there was sig-

nificant misconduct by the prosecutor, particularly several remarks during closing argument. *See State v. Brown*, No. C4–91–305, 1991 WL 271489 (Minn.App. Dec. 24, 1991), *pet. for rev. granted in part, denied in part* (Minn. Feb. 27, 1992). In light of the constitutional error, which may have been compounded by the prosecutor's remarks, we conclude Brown was denied a fair trial.

Brown also contends the trial court made evidentiary errors in allowing the cross-examination questions. In light of our decision we decline to address this issue.

## DECISION

Cross-examination eliciting Brown's attorney-counseled silence violated her state constitutional right against self-incrimination.

Reversed and remanded for a new trial.