**STATE of Minnesota, Petitioner, Appellant,**

**v.**

**Roxanne Denise BROWN, Respondent.**

No. C4–91–305.

Supreme Court of Minnesota.

May 21, 1993.

Wyman A. Nelson, Wright County Atty., Buffalo, Hubert H. Humphrey, III, Atty. Gen., Robert A. Stanich, Sp. Asst. Atty. Gen., St. Paul, for appellant.

John M. Stuart, State Public Defender, Scott G. Swanson, Asst. State Public Defender, Minneapolis, for respondent.

PAGE, Justice.

Defendant was convicted of first degree assault in connection with the brutal beating of her two-year-old daughter on October 11, 1990. Defendant appealed, and the conviction was affirmed by the court of appeals. Defendant petitioned this court for further review, and, by order dated February 27, 1992, we remanded on the sole issue of "whether the trial court prejudicially erred in allowing the prosecutor to cross-examine defendant concerning her failure to visit her daughter and the reasons therefor." In its second opinion, 488 N.W.2d 848, the court of appeals reversed the conviction, ruling that such questioning violated Defendant's right against self-incrimination under Article 1, § 7, of the Minnesota Constitution. We now reverse the court of appeals and reinstate the conviction.

At some point between Saturday, September 16, 1989, and Monday, September 18, 1989, Defendant's daughter, A.B., was brutally beaten. Initially, Defendant's boyfriend, Kurt Kluever, was charged with the assault of A.B. In April 1990, however, Kluever was acquitted in a jury trial during which Defendant confessed to the crime and exculpated Kluever. Prior to Defendant taking the stand at Kluever's trial, the

trial court carefully explained her rights to her. After having been informed of her rights, Defendant was placed under oath and proceeded to testify that she was responsible for A.B.'s injuries. Defendant also had admitted to other individuals, on five separate occasions, that she had caused her child's injuries. After Kluever's acquittal, Defendant was arrested and charged with the assault. After her release from the hospital, A.B. was placed in foster care. In the subsequent child protection proceeding which began in the fall of 1989, Defendant was required to undergo psychological and chemical dependency evaluations before she would be allowed to visit A.B. Defendant did not undergo the required evaluations.

At her own trial Defendant retracted her confessions and denied assaulting A.B. She stated that Kluever had beaten the child and that her confession under oath was a lie. Further, she testified that she loved her child and that she would never do anything like that to her.

Defendant was found guilty of first degree assault, and that judgment was affirmed by the court of appeals. *State v. Brown*, No. C4–91–305, 1991 WL 271489 (Minn.App.Dec. 24, 1991). Upon review we remanded to the court of appeals for a determination of whether the trial court erred by allowing the prosecutor to ask the following questions:

Q: Do you recall my last question? It was how many times have you visited with * * * [A.B.] since she has been in foster care, in the custody of Wright County Human Services?

A: Since she has been in foster care I have not seen her.

Q: Okay. And why is that you have not seen her?

A: Because I had psychological and chemical dependency evaluations that I had to do before I could have visitation with her.

Q: And you have not had those psychological or chemical dependency evaluations, have you?

A: No.

Q: And why not?

A: It was—I was under—advised by my lawyer not to have them because in my criminal case that was regarded to— this could be held against me in court.

These questions had been asked for the purpose of impeaching Defendant's assertion that she loved her daughter very much and would never do anything like the crime charged.

The court of appeals, citing our decision in *State v. Billups*, 264 N.W.2d 137 (Minn. 1978), concluded that this line of questioning violated Defendant's right against self-incrimination under the Minnesota Constitution. *State v. Brown*, 488 N.W.2d 848, 852 (Minn.App.1992). We reverse. Defendant's privilege against self-incrimination was not violated under our state constitution, as the privilege was not implicated by the prosecutor's questions.[1] We further hold that the trial court did not abuse its discretion by permitting the questions to be asked.[2]

In order to find a violation of the privilege against self-incrimination, we must answer two questions: first, whether the privilege has been properly invoked, and second, whether a violation of the privilege has occurred. If the first question is answered in the negative, we need not proceed to the second. Whether the privilege has been properly invoked is for the court to decide. *Rogers v. United States*, 340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 344 (1951). It is not to be decided by the party assert-

**1.** The privilege against self-incrimination may not be invoked until "testimony sought to be elicited will in fact tend to incriminate." *Brown v. United States*, 356 U.S. 148, 155, 78 S.Ct. 622, 627, 2 L.Ed.2d 589 (1958).

**2.** During oral argument counsel for the Defendant conceded that the questions were constitutionally permissible, but argued that the questions constituted prosecutorial misconduct and,

in the alternative, that the trial court abused its discretion by permitting the questioning. We decline to address Defendant's prosecutorial misconduct argument because that issue is not properly before this court. The prosecutorial misconduct issue was initially raised at the time of Defendant's first petition for further review, and we declined to grant review of that issue.

ing the privilege. Here, the court of appeals first failed to consider whether the privilege against self-incrimination was properly invoked.

■ The privilege against self-incrimination is implicated by prosecutorial questioning whenever the questioning requires answers that would in themselves support a conviction or furnish a link in the chain of evidence needed to prosecute the accused. *See Hoffman v. United States,* 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951); *Parker v. Hennepin County District Court, Fourth Judicial District,* 285 N.W.2d 81, 83 (Minn.1979).

■ In this case Defendant is charged with the first degree assault of her child. We hold that the prosecutor's rebuttal questions regarding Defendant's failure to visit her daughter and her failure to undergo the evaluations did not require answers which would in themselves support a conviction for first degree assault, nor did they require answers which would furnish a link in the chain of evidence needed to prosecute Defendant.

Defendant argues that requiring her to testify about her lawyer's advice not to have the evaluations because they "could be held against me in court," implied to the jury that she had told her attorney that she was guilty. While there is some remote possibility that a jury could infer that Defendant had "told her attorney that she was guilty," such an inference requires a leap of faith which this court, on the facts before us, is unwilling to make. There are any number of reasons unrelated to his or her belief or knowledge of the client's guilt for which an attorney might advise a client to remain silent. Further, the counseled silence, which is at issue here, occurred in a civil proceeding unrelated to this criminal action, the silence was not induced by any action on the part of the government, and it occurred months before Defendant was charged or even considered as a suspect in A.B.'s assault.

The questions at issue were asked on cross-examination, after Defendant stated on direct that she loved her daughter very much and would never do anything like the crime charged. Such statements may be impeached on cross-examination without running afoul of the privilege against self-incrimination. *Brown v. United States,* 356 U.S. 148, 78 S.Ct. 622, 2 L.Ed.2d 589 (1958). A defendant "has no right to set forth to the jury all the facts which tend in his favor without laying himself open to a cross-examination upon those facts." *Id.* at 155, 78 S.Ct. at 626 (quoting *Fitzpatrick v. United States,* 178 U.S. 304, 315, 20 S.Ct. 944, 948, 44 L.Ed. 1078 (1900)). In order to impeach her statements, the prosecutor elicited statements from Defendant that she failed to undergo evaluations required as a condition of visitation with her child. Clearly, asking Defendant how many times she had seen A.B. since she was in foster care, why she had not seen her, whether she had had the psychological and chemical dependency evaluations, and why she had not had the evaluations, did not, under the circumstances, tend to incriminate her because the answers to those questions could not result in the disclosure of information which would support either a conviction for first degree assault or furnish a link in the chain of evidence needed to prosecute Defendant for first degree assault. Thus, no violation of the privilege against self-incrimination occurred, and Defendant's constitutional rights were not offended.

Having determined that the questioning did not violate Defendant's constitutional privilege against self-incrimination, we next consider whether the probative value of the cross-examination outweighed its prejudicial effect, and, if not, whether the trial court abused its discretion by allowing it. Minn.R.Evid. 403; *State v. Olkon,* 299 N.W.2d 89, 101 (Minn.1980), *cert. denied,* 449 U.S. 1132, 101 S.Ct. 954, 67 L.Ed.2d 119 (1981). We find that the cross-examination was probative and that the trial court did not abuse its discretion by allowing this questioning.

■ Defendant had effectively "opened the door" to cross-examination regarding her actions toward her daughter when she stated on direct examination that she loved A.B. very much and would not

abuse her. The "determination of what constitutes proper rebuttal evidence rests almost wholly in the discretion of the trial court." *State v. Eling,* 355 N.W.2d 286, 291 (Minn.1984) (*citing State v. Collins,* 276 Minn. 459, 473, 150 N.W.2d 850, 860 (1967), *cert. denied,* 390 U.S. 960, 88 S.Ct. 1058, 19 L.Ed.2d 1156 (1968)). The cross-examination at issue was certainly probative because it tended to rebut Defendant's testimony on direct that she loved her daughter and would not do anything like the crime charged. Although the questioning may well have been prejudicial toward Defendant, it was no more prejudicial than most other forms of impeachment. Moreover, it was far less prejudicial than the fact that defendant had admitted to assaulting A.B. on six separate occasions, including once under oath at Kluever's trial. Because the questions asked by the prosecution were probative of defendant's love for A.B. and of the credibility of her statements on direct examination and were not unduly prejudicial, we hold that allowing the questioning was not an abuse of discretion by the trial court.

Reversed and conviction reinstated.