DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of conviction for murder, following a jury trial in the Lucas County Court of Common Pleas. For the reasons that follow, we affirm appellant's conviction, but vacate the trial court's order that he pay his own attorney fees and confinement costs.
 {¶ 2} On the morning of September 27, 2003, Toledo Police found the body of 34 year old Emanuel Zapata slumped behind the wheel of his pickup truck in a vacant lot in the central city. Zapata had been beaten to death.
 {¶ 3} Police interviewed Zapata's neighbors who reported last having seen him very intoxicated at approximately 10:00 p.m. the night before his body was found. After some time, the investigation focused on a crack house a few blocks from where Zapata was found. The house was owned by the mother of Eric Johnson, who along with the unrelated appellant, Takoda Johnson, operated from there as drug dealers.
 {¶ 4} The story that eventually emerged was relayed at trial in the testimony of Eric Johnson's girlfriend, Robbie Malone. Malone testified that on the evening of September 26, 2003, she accompanied Eric to the house where they found appellant and an "unidentified white male." According to Malone, Zapata arrived later: drunk and acting "goofy." At one point, Malone testified, Zapata began shadowboxing appellant.
 {¶ 5} Malone testified that she was in another room, but heard a loud noise. Upon rejoining the others, Malone saw Zapata lying on the floor. Appellant, according to Malone's testimony, told her that he had struck Zapata before Zapata could strike him. In the process, it appeared, appellant injured his hand. While appellant tended his hand, Eric struck Zapata with a plastic pipe.
 {¶ 6} Malone testified that things began to calm until Eric told appellant to leave Zapata alone because Zapata had AIDS. At this point, according to Malone, appellant became angry, saying that Zapata had better not have given him AIDS. Malone testified appellant began to stomp Zapata, later striking him with a two-by-four.
 {¶ 7} When Zapata offered no further resistance, appellant drove off in Zapata's truck. Appellant returned a short time later, placing Zapata in Malone's minivan. All four drove to the vacant lot where appellant had parked Zapata's truck. There Eric and appellant carried Zapata from the van and placed his body in his truck. It was at this location that police found Zapata's body the next morning.
 {¶ 8} When Eric Johnson testified, he had already pled guilty to a reduced charge of manslaughter in connection with Zapata's death and had been sentenced to four years incarceration. Eric confirmed Robbie Malone's account of events, adding that at one point Zapata attempted to leave, saying he would return with "his people." The two Johnsons did not allow Zapata to leave. Eric Johnson said that Zapata was still alive when they left him in his truck.
 {¶ 9} Appellant's testimony contradicted that of Malone and Eric Johnson. According to appellant, he punched Zapata once when Zapata came at him with a knife. When Zapata then became engaged in a fight with Eric Johnson, appellant reported that he fled the house and knew nothing of events that followed.
 {¶ 10} At the conclusion of the trial, the jury found appellant guilty of murder. The trial court accepted the verdict and sentenced appellant to an indefinite term of imprisonment of from 15 years to life. It is from this judgment of conviction and sentence that appellant now brings this appeal.
 {¶ 11} He sets forth the following six assignments of error:
 {¶ 12} 1. "The court erred in not instructing the jury on the lesser included offense of voluntary manslaughter and trial counsel was ineffective in failing to request an instruction to the jury regarding the lesser included offense of voluntary manslaughter."
 {¶ 13} 2. "The trial court erred to the prejudice of Takoda by permitting the prosecutor to cross-examine on his post-arrest silence in violation of his due process rights under the Fifth,Sixth and Fourteenth Amendments to the United States Constitution and the applicable portions of the Ohio Constitution."
 {¶ 14} 3. "The trial court erred to the prejudice of Takoda by denying the motion for acquittal presented by the defense at the conclusion of the trial."
 {¶ 15} 4. "The trial court erred to the prejudice of Mr. Johnson when it ordered him to pay unspecified costs, including court appointed fees, without first determining the ability to pay those costs."
 {¶ 16} 5. "Insofar as any of the errors complained of herein are deemed not to have been preserved property by trial counsel, appellant was denied the effective assistance of counsel to which he is constitutionally entitled."
 {¶ 17} 6. "Even if the assigned errors viewed individually are determined to be harmless, their cumulative effect can be prejudicial."
 I. Voluntary Manslaughter {¶ 18} Appellant contends, in his first assignment of error, that he was entitled to have the jury instructed on the lesser offense of voluntary manslaughter. Appellant maintains that had the jury believed his testimony that it was Zapata who first attacked him, it could have concluded that this constituted the "serious provocation" sufficient to be encompassed by R.C.2903.03: voluntary manslaughter. He, therefore, insists that he was entitled to an instruction pursuant to State v. Tyler
(1990), 50 Ohio St.3d 24, 36.
 {¶ 19} Appellant did not request a voluntary manslaughter instruction, nor object to its absence in the jury's charge. In such circumstances, a defendant is deemed to have waived error relative to the instruction. State v. Underwood (1983),3 Ohio St.3d 12, syllabus. Appellant recognizes this and fashions his argument under this assignment of error to charge ineffective assistance of trial counsel for failing to request the voluntary manslaughter instruction.
 {¶ 20} To prevail on a claim of ineffective assistance of counsel, a defendant must show not only that trial counsel's performance was deficient, but that the error was so serious that it undermined the reliability of the trial's result. Stricklandv. Washington (1984), 466 U.S. 668, 687. Accord, State v.Smith (1985), 17 Ohio St.3d 98, 100.
 {¶ 21} Scrutiny of counsel's performance must be deferential. Strickland v. Washington at 689. In Ohio, a properly licensed attorney is presumed competent and the burden of proving ineffectiveness is the defendant's. State v. Smith,
supra. Counsel's actions which "might be considered sound trial strategy," are presumed effective. Strickland v. Washington at 687. "Prejudice" exists only when the lawyer's performance renders the result of the trial unreliable or the proceeding unfair. Id. Appellant must show that there exists a reasonable probability that a different verdict would have been returned but for counsel's deficiencies. See id. at 694. See, also, State v.Lott (1990), 51 Ohio St.3d 160, for Ohio's adoption of theStrickland test.
 {¶ 22} This assignment of error fails on at least two levels. First, a fair view of appellant's trial strategy reveals that he sought to place the responsibility for Zapata's death on Eric Johnson. Trial counsel may well have wished to limit jury options in considering scenarios in which he had any culpability. This is an exercise of trial strategy which must be presumed effective. Second, since the jury found appellant guilty of murder, it seems improbable that giving it an additional lesser option would have resulted in a different verdict. In this circumstance, prejudice is not demonstrated. Accordingly, appellant's first assignment of error is not well-taken.
 II. Post-Arrest Silence {¶ 23} In his own defense, appellant testified that at some point, without provocation, Zapata pushed him to the floor, then pulled a knife on him as he was getting up. According to appellant, he responded by striking Zapata once, then running from the house. Appellant suggested that his single blow to Zapata was in self-defense.
 {¶ 24} The state's cross-examination was extensive. At one point the state asked appellant when he first spoke to police, asserting self-defense:
 {¶ 25} "Q. The first time you talked to Detective Smith, a police officer, was in April; is that correct:
 {¶ 26} "A. I believe so, yes.
 {¶ 27} Q. Okay. And that is some seven months after this event occurred?
 {¶ 28} "[Defense counsel]: Your Honor, this whole line is totally improper.
 {¶ 29} "THE COURT: Well, it is cross examination. The first question, I'm going to allow it. You may object again. It's cross examination. I'm going to allow it."
 {¶ 30} At this point, appellant's counsel requested a bench conference:
 {¶ 31} "[Defense counsel]: * * * It was my decision that he talk to nobody at that time because it was my decision that — my advice to him. Now, he has a right to remain silent, and this is commenting —
 {¶ 32} "[Prosecutor]: Judge, he's waived his right because he's taken the stand.
 {¶ 33} "[Defense counsel]: He's waived his right in April, and he's waived his right now. He's testifying now. But you're making something out of that he should have come forward sooner.
 {¶ 34} "THE COURT: Make your record.
 {¶ 35} "[Prosecutor]: Judge, he last waived his right,Fifth Amendment rights, by taking the stand. I've only asked him, it's been seven months. You waited seven months before the first time that he talked to the police. That is a fair question. He's waived his Fifth Amendment right by taking the stand, and that's clear in all the case law.
 {¶ 36} "THE COURT: I'm going to allow it. You made the record."
 {¶ 37} In his second assignment of error, appellant complaints that the state's cross-examination about the lengthy delay in raising self-defense implied recent fabrication and constituted an improper comment on his post-arrest silence. Appellant insists such questioning violated his Fifth Amendment right to remain silent and that the trial court committed prejudicial error by permitting it.
 {¶ 38} In Doyle v. Ohio (1976), 426 U.S. 610, 619, the Supreme Court of the United States held that the state's use of a defendant's silence after arrest and after having been read his rights, pursuant to Miranda v. Arizona (1966), 384 U.S. 436, is a due process violation. According to the Doyle court, contained in the Miranda warning is an implicit assurance that the exercise of the right to be silent will not be later, "* * * used to impeach an explanation subsequently offered at trial."Doyle at 618. In view of that implicit promise, to permit such use would be "fundamentally unfair."
 {¶ 39} By contrast, the court later held that the Doyle
prohibition does not apply to pre-arrest silence, because "* * * no governmental action induced petitioner to remain silent before arrest." Jenkins v. Anderson (1980), 447 U.S. 231, 240. Similarly, in a case discussed by both parties in this matter,Doyle was held inapplicable when a defendant did not receive, or the record did not reflect that the defendant received,Miranda warnings. Fletcher v. Weir (1982), 455 U.S. 603, 605. In both Jenkins and Fletcher the court held that, absent the implied government assurances represented in the Miranda
warnings, no inherent due process violation arose and that the states may resolve the question by reference to their own rules of evidence. Jenkins at 240-241; Fletcher at 607.
 {¶ 40} There is some dispute as to how Doyle applies in Ohio. State v. Combs (1991), 62 Ohio St.3d 278, seems to reject the Miranda/no Miranda distinction of Jenkins andFletcher, appearing to impose a rule that Doyle is applicable whenever Miranda warnings should have been given. Id. at 281. Indeed, this is the analysis employed by the Second District Court of Appeals in State v. Maggard (June 4, 1999), 2d Dist. No. 17198. Nevertheless, even that court continues to employ the pre-Miranda/post-Miranda Doyle analysis. State v. Hannah,
2d Dist. No. 19208, 2003-Ohio-5525, at ¶ 32-33. This court has used the same rule. See State v. Scott, 6th Dist. No. L-01-1337, 2003-Ohio-1402, at ¶ 19.
 {¶ 41} The twist in the present matter, goes to whether appellant was advised of his Miranda rights. To be sure, there is nothing in the record to suggest that he was read his rights. Absence of such affirmative evidence of a defendant being advised of Miranda is ordinarily fatal to a Doyle objection. Jenkinsv. Anderson, supra at 240; State v. Scott, supra at ¶ 19. There is in the record, however, the proffer of appellant's counsel that appellant's post-arrest silence was on his advice.
 {¶ 42} In all fairness, we cannot distinguish between the implied promise not to use an accused's silence against him when it is delivered by an officer of the court rather than an officer of the law. Both speak with authority with regard to an accused's rights and it seems unfair that an accused should be able to rely upon the warnings of one and not the other. Accordingly, we hold that Miranda-type warnings issued by counsel are equivalent to those issued by police in a Doyle analysis. Accordingly, the trial court erred in permitting questioning concerning appellant's post-Miranda silence.
 {¶ 43} Nevertheless, appellant's assignment of error cannot be sustained unless we find that impermissible reference to his post-Miranda silence operated to his prejudice. State v.Moreland (1990), 50 Ohio St.3d 58, 64, citing Chapman v.California (1967), 386 U.S. 18. Constitutional error in the admission of evidence is prejudicial unless it appears, beyond a reasonable doubt, that the error was harmless. State v.Williams (1983), 6 Ohio St.3d 281, at paragraph six of the syllabus. Error is harmless beyond a reasonable doubt when the remaining evidence, standing alone, constitutes overwhelming proof of the defendant's guilt. Id.
 {¶ 44} Two witnesses testified that they were present when appellant participated in the delivery of a beating to Emanuel Zapata that resulted in his death. These witnesses' testimony is consistent between themselves and other witnesses and consistent with the physical evidence. Appellant's testimony was that the five foot eight inch, 120 pound Zapata attacked him, threw him to the ground, then pulled a knife. According to appellant, he then ran from the house and did not return. The jury clearly believed the state's witnesses over appellant. We see no likelihood that this would have changed had there been no question concerning appellant's post-arrest silence. Consequently, the trial court's error in permitting that line of questioning was harmless beyond a reasonable doubt. Accordingly, appellant's second assignment of error is not well-taken.
 III. Weight and Sufficiency {¶ 44} In his third assignment of error, appellant maintains that the trial court erred in denying his motion for acquittal pursuant to Civ.R. 29(A). Appellant insists that the evidence present at trial was insufficient to sustain a conviction and that the jury's verdict was against the manifest weight of the evidence.
 {¶ 45} When reviewing the denial of a Crim.R. 29(A) motion, an appellate court evaluates whether the evidence is such that reasonable minds can differ as to whether each material element of the crime charged has been proven beyond a reasonable doubt. See State v. Bridgeman (1978), 55 Ohio St.2d 261, 263.
 {¶ 46} The standard is the same as is used to review a sufficiency of the evidence claim. State v. Carter (1995),72 Ohio St.3d 545, 553. The court must determine whether the state has presented evidence which, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The test is, viewing the evidence in a light most favorable to the prosecution, could any rational trier of fact have found the essential elements of the crime proven beyond a reasonable doubt.State v. Thompkins (1997), 78 Ohio St.3d 380, 390 (Cook, J., concurring); State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. See, also, State v. Eley (1978),56 Ohio St.2d 169; State v. Barns (1986), 25 Ohio St.3d 203.
 {¶ 47} With respect to a manifest weight question, the appellate court acts as the "thirteenth juror" to determine whether the trier-of-fact lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered. Thompkins at 387.
 {¶ 48} Appellant was convicted of murder, in violation of R.C. 2903.02(A), which prohibits one from purposely causing the death of another. One acts purposefully when it is his or her specific intent to cause a certain result. R.C. 2901.22(A). In Ohio, one is presumed to intend results which are the natural, reasonable, and probable consequences of a voluntary act. Statev. Johnson (1978), 56 Ohio St.2d 35, 39.
 {¶ 49} In this matter, there is testimony that appellant beat and stomped on Zapata with such force that his skull was fractured and his spine snapped. Appellant then concealed Zapata's body, extinguishing any possibility that he would obtain medical assistance and survive. In our view, this testimony, if believed, establishes the elements of the offense for which appellant was convicted.
 {¶ 50} As regards the weight of the evidence, we see no indication that the trier-of-fact lost its way or that any manifest injustice occurred. Accordingly, appellant's third assignment of error is not well-taken.
 IV. Court Fees {¶ 51} Pursuant to R.C. 2929.02(B), a violation of R.C.2903.02 is a special felony. One convicted of such an offense must be sentenced to an indeterminate term of incarceration of from 15 years to life. Thus, when the jury returned a guilty verdict, the court moved directly to sentencing without further proceedings and imposed the mandatory sentence.
 {¶ 52} In its judgment entry, the court also found appellant, "* * * to have, or reasonably may be expected to have, the means to pay all or part of the applicable costs of supervision, confinement, assigned counsel, and prosecution as authorized by law." The court then ordered appellant to reimburse the state and the county for such costs.
 {¶ 53} In his fourth assignment of error, appellant contends that the court's imposition of these costs was erroneous in that there is nothing in the record to suggest that the court considered appellant's present or future ability to pay. The state responds that since the court stated that it had considered appellant's ability to pay, this is sufficient.
 {¶ 54} "* * * R.C. 2947.23 requires a trial court, in all criminal cases, to `include in the sentence the costs of prosecution and render a judgment against the defendant for such costs.' The 'costs of prosecution' do not include the defendant's attorney fees but, rather, are the court costs incurred in the prosecution of the case. Only pursuant to R.C. 2941.51 can a trial court order a criminal defendant to pay his appointed counsel's fees. * * *
 {¶ 55} "R.C. 2929.18(A)(4) allows a trial court to impose as part of a sanction the costs of confinement. Before imposing such a sanction, however, `the court shall consider the offender's present and future ability to pay the amount of the sanction[.]' R.C. 2929.19(B)(6). Although the court is not required to hold a hearing to make this determination, R.C. 2929.18(E), there must be some evidence in the record that the court considered the offender's present and future ability to pay the sanction imposed." State v. Holmes, 6th Dist. No. L-01-1459, 2002-Ohio-6185 at ¶ 20-21.
 {¶ 56} With respect to attorney fees and confinement costs, there must be some evidence of record to support a defendant's ability to pay. See, also, State v. Fisher, 12th Dist. No. CA98-09-190, 2002-Ohio-2069. In this matter, the court moved directly to sentencing after the verdict and made no inquiry about appellant's present or future ability to pay. Absent such an inquiry or other evidence upon which the court could have based its findings, imposition of attorney fees and confinement costs are erroneous. Accordingly, appellant's fourth assignment of error is well-taken.
 V. Waiver/Cumulative Errors {¶ 57} In his remaining assignments of error, appellant posits that, if any of the prior assignments of error have not been preserved by trial counsel, that he was denied effective assistance of counsel and that, if any individual assignments of error were deemed harmless, they should be cumulatively determined prejudicial.
 {¶ 58} Since, other that the jury instruction which was deemed an effective practice, we failed to find any of appellant's prior assignments of error not preserved, appellant's fifth assignment of error is not well-taken.
 {¶ 59} Since we found only one of appellant's assignments of error to be nonprejudicial, there can be no question of cumulative effect. Accordingly, appellant's sixth assignment of error is not well-taken.
 {¶ 60} On consideration whereof, the judgment of the Lucas County Court of Common Pleas is affirmed in part and reversed in part. This matter is remanded to said court for a redetermination of the imposition of attorney fees and confinement costs. Appellee is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
Judgment Affirmed in part and reversed in part.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Pietrykowski, J., Singer, P.J., Skow, J. concur.