FLETCHER, SUPERINTENDENT, BELL COUNTY
FORESTRY CAMP *v.* WEIR

No. 81–1049.   Decided March 22, 1982

Per Curiam.

In the course of a fight in a nightclub parking lot, Ronnie Buchanan pinned respondent Weir to the ground.   Buchanan then jumped to his feet and shouted that he had been stabbed; he ultimately died from his stab wounds.   Respondent immediately left the scene, and did not report the incident to the police.

At his trial for intentional murder, respondent took the stand in his own defense.   He admitted stabbing Buchanan, but claimed that he acted in self-defense and that the stabbing was accidental.   This in-court statement was the first occasion on which respondent offered an exculpatory version of the stabbing.   The prosecutor cross-examined him as to

why he had, when arrested, failed either to advance his exculpatory explanation to the arresting officers or to disclose the location of the knife he had used to stab Buchanan. Respondent was ultimately found guilty by a jury of first-degree manslaughter. The conviction was affirmed on appeal to the Supreme Court of Kentucky.

The United States District Court for the Western District of Kentucky then granted respondent a writ of habeas corpus, and the Court of Appeals for the Sixth Circuit affirmed. 658 F. 2d 1126 (1981). The Court of Appeals concluded that respondent was denied due process of law guaranteed by the Fourteenth Amendment when the prosecutor used his postarrest silence for impeachment purposes.[1] Although it did not appear from the record that the arresting officers had immediately read respondent his *Miranda* warnings,[2] the court concluded that a defendant cannot be impeached by use of his postarrest silence even if no *Miranda* warnings had been given. The court held that "it is inherently unfair to allow cross-examination concerning post-arrest silence," 658 F. 2d, at 1130, and rejected the contention that our decision in *Doyle* v. *Ohio*, 426 U. S. 610 (1976), applied only where the police had read *Miranda* warnings to a defendant. Because we think that the Court of Appeals gave an overly broad reading to our decision in *Doyle* v. *Ohio, supra,* we reverse its judgment.

One year prior to our decision in *Doyle,* we held in the exercise of our supervisory power over the federal courts that silence following the giving of *Miranda* warnings was ordi-

---

[1] During cross-examination, the prosecutor also questioned respondent concerning his failure *prior to his arrest* to report the incident to the police and offer his exculpatory story. Relying on our decision in *Jenkins* v. *Anderson,* 447 U. S. 231 (1980), the Court of Appeals correctly held that there was no constitutional impropriety in the prosecutor's use of respondent's pre-arrest silence for impeachment purposes.

[2] *Miranda* v. *Arizona,* 384 U. S. 436 (1966).

narily so ambiguous as to have little probative value. *United States* v. *Hale*, 422 U. S. 171 (1975). There we said:

> "In light of the many alternative explanations for his pretrial silence, we do not think it sufficiently probative of an inconsistency with his in-court testimony to warrant admission of evidence thereof." *Id.*, at 180.

The principles which evolved on the basis of decisional law dealing with appeals within the federal court system are not, of course, necessarily based on any constitutional principle. Where they are not, the States are free to follow or to disregard them so long as the state procedure as a whole remains consistent with due process of law. See *Cupp* v. *Naughten*, 414 U. S. 141, 146 (1973). The year after our decision in *Hale*, we were called upon to decide an issue similar to that presented in *Hale* in the context of a state criminal proceeding. While recognizing the importance of cross-examination and of exposing fabricated defenses, we held in *Doyle* v. *Ohio*, *supra*, that because of the nature of *Miranda* warnings it would be a violation of due process to allow comment on the silence which the warnings may well have encouraged:

> "[W]hile it is true that the *Miranda* warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings. In such circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial." *Id.*, at 618 (footnote omitted).

The significant difference between the present case and *Doyle* is that the record does not indicate that respondent Weir received any *Miranda* warnings during the period in which he remained silent immediately after his arrest. The majority of the Court of Appeals recognized the difference,

but sought to extend *Doyle* to cover Weir's situation by stating that "[w]e think an arrest, by itself, is governmental action which implicitly induces a defendant to remain silent." 658 F. 2d, at 1131. We think that this broadening of *Doyle* is unsupported by the reasoning of that case and contrary to our post-*Doyle* decisions.

In *Jenkins* v. *Anderson*, 447 U. S. 231, 239 (1980), a case dealing with pre-arrest silence, we said:

> "Common law traditionally has allowed witnesses to be impeached by their previous failure to state a fact in circumstances in which that fact naturally would have been asserted. 3A J. Wigmore, Evidence § 1042, p. 1056 (Chadbourn rev. 1970). Each jurisdiction may formulate its own rules of evidence to determine when prior silence is so inconsistent with present statements that impeachment by reference to such silence is probative."

In *Jenkins*, as in other post-*Doyle* cases, we have consistently explained *Doyle* as a case where the government had induced silence by implicitly assuring the defendant that his silence would not be used against him. In *Roberts* v. *United States*, 445 U. S. 552, 561 (1980), we observed that the post-conviction, presentencing silence of the defendant did not resemble "postarrest silence that may be induced by the assurances contained in *Miranda* warnings." In *Jenkins*, we noted that the failure to speak involved in that case occurred before the defendant was taken into custody and was given his *Miranda* warnings, commenting that no governmental action induced the defendant to remain silent before his arrest. 447 U. S., at 239–240. Finally, in *Anderson* v. *Charles*, 447 U. S. 404, 407–408 (1980), we explained that use of silence for impeachment was fundamentally unfair in *Doyle* because "*Miranda* warnings inform a person of his right to remain silent and assure him, at least implicitly, that his silence will not be used against him. . . . *Doyle* bars the use against a criminal defendant of silence maintained after receipt of governmental assurances."

In the absence of the sort of affirmative assurances embodied in the *Miranda* warnings, we do not believe that it violates due process of law for a State to permit cross-examination as to postarrest silence when a defendant chooses to take the stand.  A State is entitled, in such situations, to leave to the judge and jury under its own rules of evidence the resolution of the extent to which postarrest silence may be deemed to impeach a criminal defendant's own testimony.

The motion of respondent for leave to proceed *in forma pauperis* is granted.

The petition for certiorari is granted, the judgment of the Court of Appeals is reversed, and the case is remanded for proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE BRENNAN would set the case for oral argument.

JUSTICE MARSHALL dissents from the summary reversal of this case.