# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 1999-CT-01698-SCT

*TIMOTHY McGRONE a/k/a THOMAS McCALLAHAN*

*v.*

*STATE OF MISSISSIPPI*

## <u>ON WRIT OF CERTIORARI</u>

| | |
|---|---|
| DATE OF JUDGMENT: | 8/3/1999 |
| TRIAL JUDGE: | HON. JAMES E. GRAVES, JR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | THOMAS M. FORTNER |
| | ROBERT M.. RYAN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: CHARLES W. MARIS, JR. |
| DISTRICT ATTORNEY: | EDWARD J. PETERS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED - 02/21/2002 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 3/14/2002 |

**EN BANC.**

**DIAZ, JUSTICE, FOR THE COURT:**

¶1. Timothy McGrone was indicted by the Hinds County Grand Jury on one count each of theft of a motor vehicle, aggravated assault, aggravated assault on a law enforcement officer, and simple assault on a law enforcement officer, arising from McGrone's alleged theft of a truck from a construction site in Jackson. McGrone went to trial solely on the auto theft charge and was convicted and sentenced, as a habitual offender, to five years imprisonment. McGrone appealed his conviction and sentence to this Court, which assigned the case to the Court of Appeals. A divided Court of Appeals reversed McGrone's conviction and remanded the case to the circuit court. This Court granted certiorari to consider whether consistent with his due process rights, McGrone could be impeached at trial on his failure to provide, at some time after his arrest, his version of the events leading up to his arrest. After consideration, this Court finds that McGrone's due process rights were not violated by the State's questioning, and the Court of Appeals erred in reversing his conviction.

## I.

¶2. The following statement of facts is provided by the opinion of the Court of Appeals:

The charge for which McGrone stands convicted on this appeal is auto theft. There were no witnesses to the theft of the truck. Immediately preceding its theft, the truck was parked at a construction site where its owner was working. A police report was made as soon as the theft was discovered, and the truck was spotted by police officers soon after the dispatch went out. McGrone was also indicted on other charges in connection with the theft as a result of his attempt to evade police capture by leading them on a high speed chase through the city of Jackson. Those charges included two counts of aggravated assault on police officers and one count of assault on a dispatcher trainee. The police chase ended when McGrone crashed the stolen truck into a house. McGrone then exited the crashed truck and fled on foot. When he was finally apprehended, McGrone allegedly struggled with one of the police officers for control of the officer's weapon. The struggle ended when McGrone received a gunshot wound to the leg.

McGrone was granted a pretrial motion *in limine* that prohibited the admission or mentioning of any evidence of any other criminal charges against him in connection with the theft of the truck. The prosecution agreed to the motion and even moved to have two of the untried charges voluntarily dismissed without prejudice. At trial, McGrone's defense to the charge of auto theft was that he did not steal the truck. He claimed that he was driving the truck with the permission of his passenger, Milton Stewart, who had agreed to allow McGrone the use of the truck for a few hours at a cost of twenty dollars. Stewart had already testified to the contrary during the State's case-in-chief.

Stewart's testimony was that McGrone drove the truck to Stewart's residence on the day of the theft and claimed that the truck belonged to McGrone's uncle who was in the construction business. The truck's true owner was in the construction business, and there were items connected with the construction business on the truck. Therefore, Stewart said he believed the story. According to Stewart, McGrone told him that McGrone's uncle was looking for workers that day and, if Stewart was interested in working, to ride with him to the work site. Stewart testified that he agreed to go and that is how he came to be in the truck with McGrone when the police spotted the truck and tried to stop it. Stewart testified that he jumped from the truck during the chase after McGrone ignored all of the efforts of the police to get him to stop.

McGrone admitted during his trial testimony that he did not stop the truck. He testified that he did not stop the truck because he was afraid, not because he had stolen the truck. He said that, when he stopped the truck momentarily at a police roadblock, Stewart admitted that the truck was stolen. McGrone said that he then saw an individual coming toward the truck with a gun in his hand. Thinking that he might be the truck's owner, McGrone drove off and kept driving because he was afraid of being shot by the owner and caught by the police while driving a stolen vehicle. The individual with the gun was actually a plain-clothed Jackson police officer.

*McGrone v. State*, No. 1999-KA-01698-COA, at ¶¶ 2-5(Miss. Ct. App. Apr. 3, 2001).

¶3. On cross-examination the State repeatedly questioned McGrone, over defense counsel's objection, about whether he had ever told his version of the events leading up to his arrest to law enforcement. The objection was overruled, and McGrone stated that he had not spoken to anyone in law enforcement about the case. The State also referred to McGrone's action in revealing his version of the events leading up to his arrest, or lack thereof, in closing argument.

¶4. On appeal, the Court of Appeals reversed McGrone's conviction and remanded. It found that if it was

improper for the State to cross-examine a defendant regarding his silence after being arrested and read his *Miranda* warnings, then it was also improper to cross-examine McGrone in this manner, where there was no evidence in the record as to whether he had been given *Miranda* warnings or not. The Court of Appeals found that a defendant would have the protection of the Fifth Amendment in either case, and if cross-examination was prohibited under the first scenario, it was also prohibited under the second. Four judges dissented and argued that McGrone had waived the privilege by taking the stand and testifying about the merits of the case.

¶5. This Court granted the State's Petition for Writ of Certiorari.

## II.

¶6. In *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L. Ed.2d 91 (1976), the United States Supreme Court found that a defendant's post-arrest silence, following the reading of *Miranda* warnings to the defendant, could not be used for impeachment of the defendant on cross-examination at trial. As in this case, Doyle and his co-defendant gave a version of events that was difficult to contradict. The prosecution attempted, as in this case, to impeach Doyle by bringing out the fact that Doyle had not provided to police, at the time of his arrest, the version of events he was providing on the stand at trial.

¶7. The question raised in this case is whether the prohibition announced in *Doyle* applies where there is no evidence that *Miranda* warnings were given. Neither the State nor McGrone introduced evidence that the State had provided *Miranda* warnings to McGrone at the time of his arrest. There should be no surprise that the warnings were not given, as McGrone was shot in the leg by police immediately before his arrest.

¶8. *Doyle* has been cited by this Court on numerous occasions, most notably for the purposes of this case in *Johnson v. State*, 596 So.2d 865 (Miss. 1992). *Johnson* did not deal with the question of what was allowable on cross-examination; this Court reversed Johnson's conviction because of statements made by the prosecution only during closing argument concerning Johnson's post-arrest silence. While relying on *Doyle* as a basis for reversal, this Court also relied on the fact that there was no evidentiary support in the record for the prosecution's assertions, in closing argument, that Johnson had been read his rights and had not given the police a statement.

¶9. The Court of Appeals discussed the question of whether the State's cross-examination of McGrone had been proper and resolved it by finding the following:

> The State argues that the reason for the *Doyle* rule is the unfairness of first telling a defendant that he has a right to remain silent, implicitly assuring him that his silence will carry no penalty, and then using his silence against him at trial. The State contends that the rule only applies in the case of an individual who is given a *Miranda* warning. It is the State's contention that where there are no *Miranda* warnings, there is no implied assurance that the silence will not be used, and the silence then becomes probative and relevant and should be allowed. This Court disagrees.

> Under the State's reasoning, the police could simply withhold giving the *Miranda* warnings to an individual following the individual's arrest and then take advantage of the defendant's post-arrest silence even if the defendant knew without being informed by the police that he had a constitutional right to remain silent. It seems to this Court that the Fifth Amendment of the U.S. Constitution expressly guarantees the right against self-incrimination and that guarantee is not, and never has been,

dependent upon whether a *Miranda* warning is given or not. Logically, it does not follow that an individual who simply remains silent without having been told by law enforcement that he has that right loses the protection of the guarantee while an individual who is given the Miranda warning and remains silent is allowed the protection of the guarantee.

*McGrone,* ¶¶ 13-14.

¶10. The question before this Court was addressed in ***Fletcher v. Weir***, 455 U.S. 603, 102 S. Ct. 1309, 71 L. Ed. 2d 490 (1982). Weir was convicted of manslaughter. The trial record did not indicate that Weir received *Miranda* warnings during the period in which he remained silent after his arrest. The Sixth Circuit Court of Appeals found that this was irrelevant and extended the rule of *Doyle* to cases where the *Miranda* warnings were not given. The Supreme Court reversed in a per curiam opinion, stating:

> In *Jenkins v. Anderson*, 447 U.S. 231, 239, 100 S.Ct. 2124, 2129, 65 L.Ed.2d 86 (1980), a case dealing with pre-arrest silence, we said:

> Common law traditionally has allowed witnesses to be impeached by their previous failure to state a fact in circumstances in which that fact naturally would have been asserted. 3A J. Wigmore, Evidence § 1042, p. 1056 (Chadbourn rev. 1970). Each jurisdiction may formulate its own rules of evidence to determine when prior silence is so inconsistent with present statements that impeachment by reference to such silence is probative.

> In *Jenkins*, as in other post-*Doyle* cases, we have consistently explained *Doyle* as a case where the government had induced silence by implicitly assuring the defendant that his silence would not be used against him. In *Roberts v. United States*, 445 U.S. 552, 561, 100 S.Ct. 1358, 1365, 63 L.Ed.2d 622 (1980), we observed that the post-conviction, presentencing silence of the defendant did not resemble "postarrest silence that may be induced by the assurances contained in *Miranda* warnings." In *Jenkins*, we noted that the failure to speak involved in that case occurred before the defendant was taken into custody and was given his *Miranda* warnings, commenting that no governmental action induced the defendant to remain silent before his arrest. 447 U.S., at 239-240, 100 S.Ct., at 2130. Finally, in *Anderson v. Charles*, 447 U.S. 404, 407-408, 100 S.Ct. 2180, 2182, 65 L.Ed.2d 222 (1980), we explained that use of silence for impeachment was fundamentally unfair in *Doyle* because "*Miranda* warnings inform a person of his right to remain silent and assure him, at least implicitly, that his silence will not be used against him.... *Doyle* bars the use against a criminal defendant of silence maintained after receipt of governmental assurances."

> In the absence of the sort of affirmative assurances embodied in the *Miranda* warnings, we do not believe that it violates due process of law for a State to permit cross-examination as to post-arrest silence when a defendant chooses to take the stand. A State is entitled, in such situations, to leave to the judge and jury under its own rules of evidence the resolution of the extent to which postarrest silence may be deemed to impeach a criminal defendant's own testimony.

*Fletcher*, 455 U.S. at 606-07.

¶11. This Court applies the rule of ***Fletcher v. Weir*** and finds that Timothy McGrone's due process rights were not violated by the State's cross-examination concerning his post-arrest silence. Therefore, the judgment of the Court of Appeals is reversed, and McGrone's conviction for auto theft and sentence as a

habitual offender are affirmed.

¶12. **THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED; THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT IS AFFIRMED.**

**PITTMAN, C.J., SMITH, P.J., WALLER, COBB, EASLEY AND CARLSON, JJ., CONCUR. McRAE, P.J., CONCURS IN RESULT ONLY. GRAVES, J., NOT PARTICIPATING.**