CARLTON, J., for the Court.
¶ 1. On August 22, 2007, Eddie Henderson was indicted by a Panola County grand jury for burglary of the dwelling of Linda Jefferson with the intent to commit larceny pursuant to Mississippi Code Annotated section 97-17-23 (Supp.2008). On March 17, 2008, a jury in the Panola County Circuit Court found Henderson guilty of burglary. Henderson was sentenced to five years in the Mississippi Department of Corrections (MDOC) to be followed by five years of post-release supervision.
¶ 2. Henderson now timely appeals. Henderson argues that the State improperly elicited testimony from him regarding his post-arrest silence and that the trial court abused its discretion in denying his motion for a mistrial on that basis. Under *544 the Mississippi Supreme Court’s jurisprudence, a defendant’s post-arrest silence can be used against him when there is no evidence in the record that the defendant’s right to remain silent was triggered by-receiving Miranda[1] warnings. Because we find no evidence in the record that Henderson was Mirandized, we must affirm Henderson’s conviction and sentence.
FACTS AND PROCEDURAL HISTORY
¶ 3. Jefferson testified at trial that on January 1, 2007, at approximately 5:30 a.m., she heard a knock and kicking at her apartment door in Batesville, Mississippi. When Jefferson went to the door, she recognized Henderson from the neighborhood and cracked the door open. It was then that Henderson pushed his way into Jefferson’s apartment, grabbed her wrist, and told her, “We ain’t going nowhere.” After a brief struggle, Jefferson ran to a neighbor’s home and called the police.
¶ 4. Officer Nick Hughes responded to Jefferson’s call. Upon arrival, Jefferson told Officer Hughes that someone was in her apartment. Officer Hughes testified that when he approached Jefferson’s apartment, the door was open. When Officer Hughes went inside, he saw Henderson standing in Jefferson’s living room putting a candle into his coat pocket. Officer Hughes said that when he asked Henderson what he was doing, Henderson said nothing and “just stood there.”
¶ 5. Officer Hughes stated that he told Henderson to put the candle down and to come out of Jefferson’s apartment. However, Henderson put the candle down and then “took off running.” Officer Hughes subsequently apprehended Henderson and arrested him. Officer Hughes stated that Henderson appeared to be highly intoxicated when he was captured and placed in the patrol car.
¶ 6. Officer Hughes testified to the following at trial:
State: Did [Henderson] tell you that he had permission to be in the apartment? Officer Hughes: He hardly said anything to me. No, sir.
State: Did he tell you that he was having a relationship with [Jefferson]? Officer Hughes: No, never. No, sir.
No evidence exists in the record that Henderson received Miranda warnings either before or after he was apprehended.
¶ 7. When Henderson took the stand in his own defense, he testified that he knew Jefferson and that they were on a friendly basis with each other. He claimed that in the past, he and Jefferson had a “one-night stand.” Henderson said he was at the apartments where Jefferson lived because his cousin, Willie Johnson, also lived in the same complex and he wanted to get a ride home from Johnson. However, when Johnson said he was not going to let Henderson into his apartment or give him a ride home, Henderson knocked on Jefferson’s door.
¶8. Henderson stated that when he knocked on Jefferson’s door that morning, they talked, and that she walked off shortly before the police arrived. When the State asked Henderson if he thought Jefferson would know who he was if they had *545 a sexual encounter, Henderson replied: “Oh, she remembers, believe me, she remembers. Ain’t nobody [sic] going to forget nothing like that.”
¶ 9. After the above testimony, the following exchange occurred among the State, the trial court, Henderson, and Henderson’s attorney, David Walker:
State: Now if you had this perfectly good reason why you were over there, you know you’ve been charged, you know you’re going to trial, why didn’t you just come tell the police and clear all this up on the front end?
Henderson: I didn’t know—
Walker: Wait a minute. I object, Judge. The Defendant doesn’t have to explain why he didn’t give the police a statement. I object and move for a mistrial.
State: Your Honor, the fact is, [Henderson] does have the right to remain silent and he gave up that right here today. My question is: If he’s got a perfectly good reason—
Court: I’ll overrule the objection in the context that this has come down. I think that’s a legitimate question.
State: Why didn’t you tell the police?
Henderson: The police what? I wasn’t under arrest then.
State: Huh?
Henderson: I wasn’t under no [sic] arrest then. [I]f a man ain’t [sic] under arrest, he got [sic] the right to go wherever he pleases if he ain’t [sic] under arrest yet.
State: Well, when you were put in the car.
Henderson: I wasn’t charged with nothing [sic]. I wasn’t charged with a thing.
State: This happened January [1,] 2007; is that correct?
Henderson: Yes, sir.
State: And you had this really good reason why you were there that would have explained all of this, did you not?
Henderson: A reason? I just told you the reason.
State: That’s what I said.
Henderson: So you saying you can’t go in the apartment or something; I can’t go over to somebody’s house and knock on the door?
State: You can’t force your way into someone’s home.
Henderson: I didn’t, never have — never have.
[[Image here]]
State: All right. When the police [officer] opened the door, you were inside the house, correct?
Henderson: The door was already open, wide open. I’m standing right there. State: When the police [officer] came in, did he ask you to come talk to him? Henderson: He never came in. He was right at the door and I walked out.
Again, from the record before us, there is no evidence that Henderson ever received Miranda warnings.
STANDARD OF REVIEW
¶ 10. The standard of review regarding the admission or exclusion of evidence is abuse of discretion. Brown v. State, 965 So.2d 1023, 1026(¶ 10) (Miss.2007). “This Court must first determine if the proper legal standards were applied.” Id. (citation omitted). “Where error involves the admission or exclusion of evidence, this Court ‘will not reverse unless the error adversely affects a substantial right of a party.’ ” Id. (citation omitted). Similarly, we review the denial of a motion for mistrial under an abuse of discretion standard. Caston v. State, 823 So.2d 473, 492(¶ 54) (Miss.2002) (citations omitted).
*546 DISCUSSION
¶ 11. Henderson argues that the State improperly elicited testimony from him regarding his post-arrest silence and that the trial court abused its discretion in denying his motion for a mistrial. In turn, the State contends that Henderson was properly questioned on cross-examination about the fact that he did not tell law enforcement what he told the jury, as it concerned Henderson’s reason for being at Jefferson’s apartment. Additionally, the State argues that because Henderson chose to testify, he waived his privilege against self-incrimination.
¶ 12. Although we affirm Henderson’s conviction in this case, we do not do so on the basis that Henderson waived his privilege against self-incrimination when he took the stand. We affirm because the record contains no evidence that Henderson received Miranda warnings so as to trigger his right to remain silent and, therefore, to induce his silence. See McGrone v. State, 807 So.2d 1232, 1234-35 (¶¶ 6-11) (Miss.2002).
¶ 13. The issue regarding whether a defendant’s post-arrest silence can be used against him at trial was addressed by the Mississippi Supreme Court in McGrone. McGrone, 807 So.2d at 1234-35 (¶¶ 6-11). Similar to the facts in McGrone, the trial record in this case contains no evidence that Henderson received Miranda warnings. Id. at 1235(¶ 10); see also Fletcher v. Weir, 455 U.S. 603, 607, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982) (“In the absence of the sort of affirmative assurances embodied in the Miranda warnings, we do not believe that it violates due process of law for a State to permit cross-examination as to post[-]arrest silence when a defendant chooses to take the stand.”)
¶ 14. In McGrone, the defendant took the stand in his own defense. McGrone, 807 So.2d at 1233(¶ 2). During cross-examination, the State repeatedly questioned McGrone, over defense counsel’s objection, about whether he had ever told law enforcement his version of the events leading up to his arrest. Id. at (¶ 3). The trial court overruled the objection, and McGrone stated that he had not spoken to anyone in law enforcement about his case. Id.
¶ 15. Before reaching the supreme court through writ of certiorari, this Court in handling the case on appeal, found that if it was improper for the State to cross-examine McGrone regarding his silence after being arrested and read his Miranda warnings, then it was equally improper to cross-examine McGrone, “where there was no evidence in the record as to whether he had been given Miranda warnings or not.” Id. at 1233-34(¶4). In so holding, the Court found that “a defendant would have the protection of the Fifth Amendment in either case, and if cross-examination was prohibited under the first scenario, it was also prohibited under the second.” Id. at 1234(¶ 4). “Four judges dissented and argued that McGrone had waived the privilege by taking the stand and testifying about the merits of the case.” Id.
¶ 16. On writ of certiorari to the supreme court, the supreme court found that the State had not violated McGrone’s due process rights by cross-examining him regarding his post-arrest silence because no evidence in the record existed that law enforcement had Mirandized McGrone so as to trigger his right to remain silent. Id. at 1235 (¶¶ 10-11); cf. Doyle v. Ohio, 426 U.S. 610, 611, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976) (finding that prosecutor’s attempt to impeach a defendant’s exculpatory story told for the first time at trial violated the defendant’s due process rights because law enforcement had Mirandized the defendant and the prosecutor’s attempted use of the defendant’s post-Miranda silence in *547 such a manner constituted reversible error).
¶ 17. The question before the Court today regarding pre-Miranda silence was previously addressed in Fletcher. In Fletcher, the defendant Weir took the stand in his own defense. Fletcher, 455 U.S. at 603, 102 S.Ct. 1309. In his testimony, Weir admitted stabbing the victim, but claimed that he acted in self-defense. Id. This in-court statement was the first time that Weir had offered an exculpatory version of the stabbing. Id. The prosecutor cross-examined Weir as to why he had, when arrested, failed to advance his exculpatory explanation to law enforcement. Id. at 603-04, 102 S.Ct. 1309. Weir was ultimately found guilty of manslaughter by a jury. Id. at 604, 102 S.Ct. 1309. Weir appealed and lost. Id.
¶ 18. In habeas corpus proceedings, the Sixth Circuit Court of Appeals found that the State had violated Weir’s Fifth Amendment rights as outlined in Doyle when the prosecutor cross-examined Weir and made comments to the jury concerning Weir’s silence after he was arrested but before he was given Miranda warnings. Weir v. Fletcher, 658 F.2d 1126, 1133 (6th Cir.1981).
¶ 19. The Sixth Circuit Court of Appeals also found that “impeachment of a defendant with post-arrest silence is forbidden by the Constitution, regardless of whether Miranda warnings are given.” Id. at 1130. The court concluded that “it is inherently unfair to allow cross-examination concerning post-arrest silence.” Id. However, the United States Supreme Court reversed the Sixth Circuit Court of Appeals and found that it had given “an overly broad reading” to the Doyle decision. Fletcher, 455 U.S. at 604, 102 S.Ct. 1309.
¶ 20. The Supreme Court explained their reversal of the Sixth Circuit’s judgment in the following manner:
In the absence of the sort of affirmative assurances embodied in the Miranda warnings, we do not believe that it violates due process of law for a State to permit cross-examination as to post[-]arrest silence when a defendant chooses to take the stand. A State is entitled, in such situations, to leave to the judge and jury under its own rules of evidence the resolution of the extent to which post[-]arrest silence may be deemed to impeach a criminal defendant’s own testimony.
Id. at 607,102 S.Ct. 1309.
¶21. In McGrone, the Mississippi Supreme Court adopted the holdings of Doyle and Fletcher in determining that the triggering point of the right to remain silent relies on the actual delivery of the Miranda warnings. See McGrone, 807 So.2d at 1234-35 (¶¶ 6-11).[2] In accordance with McGrone, we affirm Henderson’s conviction and sentence. See id.
¶ 22. THE JUDGMENT OF THE PA-NOLA COUNTY CIRCUIT COURT OF CONVICTION OF BURGLARY OF A DWELLING AND SENTENCE OF FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND FIVE YEARS OF POST-RELEASE SUPERVISION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO PANO-LA COUNTY.
*548 KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, ISHEE AND ROBERTS, JJ., CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT. MAXWELL, J., NOT PARTICIPATING.

. Miranda v. Arizona, 384 U.S. 436, 467-68, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) (stating that both inculpatory and exculpatory statements made in response to interrogation by a defendant in police custody will be admissible at trial only if the prosecution can show that the defendant was informed of the right to consult with an attorney before and during questioning and of the right against self-incrimination prior to questioning by the police, and that the defendant not only understood these rights, but he or she voluntarily waived them).

. See also Meaghan Elizabeth Ryan, Do You Have the Right to Remain Silent?: The Substantive Use of Pre-Miranda Silence, 58 Ala. L.Rev. 903, 914 (2007) (stating that the decisions of Fletcher and Doyle "hold that, because the warnings themselves may actually induce the defendant's silence, use of that silence to suggest guilt or impeach violates due process”).