PROCEDURAL HISTORY
LEE, C.J.,
for the Court:
¶ 1. Mark Kee Brown was found guilty in the Harrison County Circuit Court of the capital murder of Larry Darnell Turner and sentenced to life in the custody of the Mississippi Department of Corrections.
¶ 2. Brown now appeals his conviction, raising the following issues: (1) the trial court failed to strike a biased juror; (2) the trial court failed to grant a mistrial when the State commented on his post-Miranda silence; and (3) the trial court erred by admitting jury instruction four, aiding and abetting. Finding no reversible error, we affirm the judgment of the trial court.
FACTS
¶ 3. In 2005, Tavaris Turner’s uncle, Larry Turner, gave him approximately $10,000 cash to hold to buy a car. Tavaris told Steven Fairley about the car and showed him the cash at work one day to prove he was serious. Fairley testified that Tavaris told him it was approximately $22,000, but Fairley was not sure of this amount. Fairley told Jason Foxworth that he planned to rob Tavaris because Tavaris was carrying a large sum of cash.
¶4. Fairley testified that on July 6, 2005, he met Foxworth, Brown, and another unnamed individual at a restaurant in Gulfport, Mississippi. Fairley drove toward Tavaris’s house, and Foxworth, Brown, and the unnamed person followed. Tavaris lived with his uncle, Larry; his cousin, Lenny Jackson; and a friend, Michael Williams. Fairley stopped and called Tavaris from a gas station. He asked if he could come by his house with a friend to look at Tavaris’s car. Tavaris said no. Fairley called again and went to Tavaris’s house anyway. Tavaris and Fairley sat on the couch talking and watching television. After a few minutes, Foxworth came in holding a gun and told everyone to get on the ground. Brown followed with a gun. Tavaris testified that *575 Brown kept him and Jackson in the living room, and Foxworth went to the back of the house to get Larry. Tavaris testified that Foxworth and Brown started demanding money. Tavaris gave the money to Brown and then heard a gunshot. Larry was shot in the back of his neck and subsequently died.
¶ 5. Tavaris and Fairley testified that neither saw who had fired the gun. Ta-varis thought it was Foxworth who had shot Larry, but he did not actually see him shoot the gun. Tavaris testified that he heard Foxworth say, “now you see we’re not playing with you.” Fairley testified that he heard Brown say, “I told you I wasn’t playing.”
DISCUSSION
I. JUROR MISCONDUCT
¶ 6. On the final day of trial, one of the jurors sent a note to the trial court that stated:
To Judge Larry Bourgeois
Sometime after 10:00 a.m. [yesterday], one juror number 10 ... stated to the entire jury panel that she had contacted a friend on Tuesday night who had served as a juror on the trial of Mr. Foxworth to find out what the verdict was in that trial. She did not tell us what she learned. When she said this the entire room went silent. I did not say anything yesterday because I was not sure what to do. After thinking about it all night, I realized I needed to tell you about it.
The note was signed by the juror. Brown’s counsel moved for a mistrial. The trial judge questioned each juror individually. Juror number ten denied she had said anything about Foxworth to the jury. One juror thought he heard juror number ten say Foxworth had been found guilty. The remaining jurors denied any knowledge of the conversation.
¶ 7. The trial judge denied Brown’s motion for a mistrial, but the judge struck juror number ten and the juror who thought he heard juror number ten say that Foxworth was found guilty. The two jurors were replaced with the alternate jurors. The juror who had written the note was not stricken. Brown argues that replacing the jurors was inadequate because the entire jury was already tainted.
¶ 8. In Gladney v. Clarksdale Beverage Co., 625 So.2d 407, 418-19 (Miss.1993), the Mississippi Supreme Court stated:
Once an allegation of juror misconduct arises, then the next step is to consider whether an investigation is warranted. In order for the duty to investigate to arise, the party contending there is misconduct must make an adequate showing to overcome the presumption in this state of jury impartiality.... At the very minimum, it must be shown that there is sufficient evidence to conclude that good cause exists to believe that there was in fact an improper outside influence or extraneous prejudicial information.
“The Uniform Rules of Circuit and County Court Practice, Rule 3.12 allows the judge to declare a mistrial only when the harm done would render the defendant without hope of receiving a fair trial.” Reed v. State, 764 So.2d 511, 513 (¶ 7) (Miss.Ct.App.2000).
¶ 9. Once the trial judge became aware of the potential juror misconduct, the trial judge investigated the matter by polling each juror individually. The two jurors involved were stricken and replaced with the alternate jurors. The judge found the other jurors were not exposed to outside information and that the juror who had written the note could remain impartial. *576 We find that the trial judge followed the guidelines of Gladney. This issue is without merit.
II. RIGHT TO REMAIN SILENT
¶ 10. Brown takes issue with the following exchange that took place during cross-examination:
Q. ... You were arrested the night of the day after — the morning after this happened for capital murder, correct?
A. Yes, sir, I was.
Q. And of course you immediately told the police where you’d been and gave them all that alibi information?
Brown’s counsel objected before Brown could answer. The trial judge overruled the objection. The trial judge found that the question did not ask whether Brown chose to exercise his right to remain silent pursuant to Miranda v. Arizona, 396 U.S. 868, 90 S.Ct. 140, 24 L.Ed.2d 122 (1969), but whether Brown had given an alibi. The prosecutor continued:
Q. Let me put it to you this way, Mr. Brown. Did you tell the police that day or that night that you had been with your girlfriend or at your girlfriend’s house all night?
A. They didn’t ask me that, sir.
Q. I’m asking you, did you tell them?
A. No, sir.
¶ 11. It is well settled that “[a] defendant has the right to remain silent following arrest, and not have that silence used against him.... ” Carr v. State, 655 So.2d 824, 845 (Miss.1995). “The test to determine whether reversal is required as a result of a prosecutor’s improper comment at trial ‘is whether or not the natural and probable effect of the statement is to create an unjust prejudice against the accused so as to result in a decision influenced by prejudice.’” Hurt v. State, 34 So.3d 1191, 1195-96 (¶ 12) (Miss.Ct.App.2009) (quoting Jackson v. State, 924 So.2d 531, 542 (¶ 36) (Miss.Ct.App.2005)).
¶ 12. Brown’s defense was that he was at his girlfriend’s house at the time of the murder baby-sitting several children while she was at work. He argues that he could not have been at the scene of the murder because he had recently been released from prison, and he did not have a driver’s license or a car. He testified on direct examination as to his alibi.
¶ 13. In McGrone v. State, 807 So.2d 1232 (Miss.2002), the Mississippi Supreme Court addressed the issue of cross-examination of a defendant with respect to post-arrest, pre-Miranda silence. Timothy McGrone was cross-examined on whether he had given an alibi to law enforcement. Id. at 1233 (¶ 3). An objection was raised, but it was overruled. Id. McGrone answered that he had not spoken to anyone in law enforcement about the case. Id. The supreme court considered whether a defendant could “be impeached at trial on his failure to provide, at some time after his arrest, his version of the events leading up to his arrest.” Id. at 1232 (¶ 1). The supreme court found that “McGrone’s due[-]process rights were not violated by the State’s cross-examination concerning his post-arrest silence.” Id. at 1235 (¶ 11). In reaching its decision, the supreme court cited Fletcher v. Weir, 455 U.S. 603, 606-07, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982), stating:
In the absence of the sort of affirmative assurances embodied in the Miranda warnings, we do not believe that it violates due process of law for a State to permit cross-examination as to post-arrest silence when a defendant chooses to take the stand. A State is entitled, in such situations, to leave to the judge and jury under its own rules of evidence the resolution of the extent to which post[-]arrest silence may be deemed to *577 impeach a criminal defendant’s own testimony.
McGrone, 807 So.2d at 1285 (¶ 10).
¶ 14. The record is unclear in this case when Brown was read his Miranda rights. However, we find that any questions regarding Brown’s post-arrest, pre-Miranda silence did not violate Brown’s due-process rights. As far as Brown’s silence after he was given the Miranda warning, we cannot find that an unjust prejudice was created. The questioning was not used as substantive proof of Brown’s guilt, and it was not revisited in the closing argument. We find this issue is without merit.
III. AIDING AND ABETTING
¶ 15. Brown argues that the trial court improperly granted jury instruction four on aiding and abetting. It reads as follows:
The Court instructs the jury that each person present at the time, and consenting to and encouraging the commission of a crime, and knowingly, willfully, and feloniously, doing any act which is an element of the crime or immediately connected with it, or leading to its commission, is as much a principal as if he had with his own hand committed the whole offense; and if you believe from the evidence beyond a reasonable doubt that the defendant, MARK KEE BROWN, did willfully, unlawfully and feloniously do any act which is an element of the crime with which he is charged or immediately connected with it or leading to its commission, then and in that event, you should find the defendant guilty of that crime as the case may be.
(Emphasis added).
¶ 16. No objection was made at trial to this jury instruction; thus, Brown asks that it be reviewed on appeal for plain error. “To determine if plain error has occurred, this Court must determine if the trial court has deviated from a legal rule, whether that error is plain, clear or obvious, and whether the error has prejudiced the outcome of the trial.” Cox v. State, 793 So.2d 591, 597 (¶22) (Miss.2001). Brown argues that this instruction was plain error because it allowed the jury to find him guilty if he committed “any act which is an element of the crime....” He asserts that this language is similar to the language condemned by Berry v. State, 728 So.2d 568, 571 (¶ 9) (Miss.1999).
¶ 17. In Berry, Merlinda Berry was found guilty of the transfer of cocaine. Id. at 570 (¶ 2). On appeal, Berry argued that the jury was improperly instructed on aiding and abetting. Id. at 571 (¶ 5). No objection was made to the instruction at trial. Id. at 571 (¶ 6). Upon a plain-error review, the Mississippi Supreme Court agreed with Berry and reversed. Id. at 571 (¶ 9). The offending jury instruction read:
The Court instructs the jury that each person present at the time, and consenting to and encouraging the commission of a crime, and knowingly, willfully and feloniously doing any act which is an dement of the crime, or immediately connected with it, or leading to its commission, is a principal.
One who aids, assists and encourages a transfer of cocaine is a principal and not an accessory, and his guilt in nowise depends upon the guilt or innocence, the conviction or acquittal of any other alleged participant in the crime. Therefore if you believe from the evidence, beyond a reasonable doubt, that Merlin-da Berry did willfully, unlawfully and feloniously do any act which is an element of the crime of transfer of cocaine, as defined by the Court’s instructions, or immediately connected with it, or leading to its commission, then and in that *578 event, you should find Merlinda Berry guilty of transfer of cocaine as charged in the indictment.
Id. at 570 (¶ 4) (emphasis added). The supreme court found that this instruction “appears to give the jury an additional option of finding the defendant guilty if she committed only one element of the crime without even finding that the crime was ever completed.” Id. at 571 (¶ 9). The supreme court also found that reading the jury instructions as a whole did not cure the defect. Id.
¶ 18. In reaching its decision in Berry, the supreme court cited to Hornburger v. State, 650 So.2d 510 (Miss.1995). The jury in Homburger was given a similar aiding and abetting instruction. Id. at 514. The jury was instructed to return a guilty verdict if it found the defendant committed “any act which is an element of the crime of burglary of a building....” Id. However, the jury was also instructed to return a verdict of not guilty if the State failed to prove any element of the crime beyond a reasonable doubt. Id. at 515. The supreme court found that although the jury was improperly instructed on aiding and abetting, “when read together, these instructions adequately informed the jury of the law making the improper instruction a harmless error.” Id.
¶ 19. We find Brown’s ease analogous to Homburger. The jury was instructed on the elements of capital murder in jury instruction two. The last paragraph of jury instruction two states: “If the prosecution has failed to prove any one or more of the above listed elements beyond a reasonable doubt, then you shall find MARK KEE BROWN not guilty of Capital Murder.” While jury instruction four could have misled the jury, we find that any confusion caused was cured by reading the instructions as a whole. Thus, any error was harmless. This issue is without merit.
¶ 20. THE JUDGMENT OF THE HARRISON COUNTY CIRCUIT COURT OF CONVICTION OF CAPITAL MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HARRISON COUNTY.
IRVING AND GRIFFIS, P.JJ., MYERS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR. RUSSELL, J., NOT PARTICIPATING.