# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-KA-00558-COA

**MALCOLM JAMAL HUSBAND A/K/A**             **APPELLANT**
**MALCOLM HUSBAND A/K/A JAMAL**
**HUSBAND**

**v.**

**STATE OF MISSISSIPPI**                         **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 02/04/2015 |
| TRIAL JUDGE: | HON. PRENTISS GREENE HARRELL |
| COURT FROM WHICH APPEALED: | MARION COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF THE STATE PUBLIC DEFENDER BY: MOLLIE MARIE MCMILLIN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BARBARA WAKELAND BYRD |
| DISTRICT ATTORNEY: | HALDON J. KITTRELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF MANSLAUGHTER AND SENTENCED TO TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH TEN YEARS SUSPENDED, AND TO PAY A $5,000 FINE AND $2,500 IN RESTITUTION |
| DISPOSITION: | REVERSED AND REMANDED - 07/26/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., BARNES AND GREENLEE, JJ.**

**BARNES, J., FOR THE COURT:**

¶1. Malcolm Husband was convicted of manslaughter and sentenced to twenty years in the custody of the Mississippi Department of Corrections (MDOC), with ten years suspended. After the trial court denied Husband's motion for a new trial, he filed an appeal.

Finding that the trial court committed reversible error in the giving of a castle-doctrine jury instruction favoring the victim, we reverse and remand for a new trial.

**FACTS AND PROCEDURAL HISTORY**

¶2. On November 14, 2013, Husband and his twelve-year-old stepson, Tylen Peters, visited Husband's elderly aunt and uncle, the McGowans, at their duplex apartment in Columbia, Mississippi. The McGowans' neighbors, Phylicia Stokes and Forester Crenshaw, were sitting outside on the shared porch, celebrating Crenshaw's birthday with a cookout and drinks. Stokes lived at the duplex with her two children; she and Crenshaw had only been dating one month, and he was in the process of moving in with her. When the McGowans did not answer their door, Husband began talking with Stokes and Crenshaw. He asked for a beer, and Crenshaw complied. Peters went back and sat in the car and was talking on his cell phone.

¶3. Husband soon became confrontational with Stokes over a minor dispute she had with his aunt and uncle concerning loud noise from Stokes's residence. Crenshaw pushed Husband back and remarked that Husband should show Stokes respect. According to Stokes, the two men got in each other's faces, repeating "Now what? Now what?" to one another. Crenshaw handed Stokes his necklace and beer that he was holding, presumably preparing to fight. Husband turned to walk back to his car in the driveway, mumbling as he left.

¶4. Simultaneously, Crenshaw walked to Stokes's car and retrieved her .380-caliber handgun from the glove box. Husband entered his car and sat down. Stokes said Husband appeared to reach for something; Husband later testified it was his car keys that he had

2

dropped. Crenshaw walked to Husband's car, holding the gun at his side, and stood inside the open door of Husband's car, not allowing Husband and Peters to leave. Peters said Crenshaw threatened to kill them.

¶5.    Mr. McGowan came outside and told Husband to leave; Husband replied to McGowan, "I'm trying to . . . . But [Crenshaw] won't let me leave." McGowan did not see either Crenshaw or Husband displaying a weapon. Crenshaw turned to face McGowan, giving him a dirty look. When he did so, Husband grabbed a gun from his car and pointed it at Crenshaw, who ran behind a neighbor's car. Husband said he initially fired the gun in the air, but when Crenshaw began firing back, he fired at Crenshaw three to four times. Stokes, however, claimed Husband pointed the gun straight at Crenshaw. A bullet hit Crenshaw in his lower back. Crenshaw continued to return fire, but Husband and Peters sped off and were not injured.

¶6.    Although the paramedic who treated Crenshaw at the scene said he was "alert" and "oriented," Crenshaw later died at the hospital from a single gunshot wound to his back. The autopsy report indicated the fatal shot was fired from an indeterminate remote distance. Toxicology reports revealed that Crenshaw had marijuana and BZP, a stimulant "designer drug," in his blood system.[1] Husband was arrested near his home shortly after the shooting. He was also booked for felony DUI; he admitted to drinking beer before arriving at the McGowans' home. The police found several shell casings at the scene of the shooting – five were from Stokes's .380-caliber handgun. Stokes surrendered the gun to law enforcement

---

[1] There was also evidence of several other narcotic drugs, but it was not clear at trial whether these were introduced during Crenshaw's medical treatment.

the following morning.

¶7. On April 15, 2014, Husband was indicted for heat-of-passion manslaughter under Mississippi Code Annotated section 97-3-35 (Rev. 2006). After a jury trial in Marion County Circuit Court on January 12-13, 2015, Husband was convicted and sentenced to twenty years in the custody of the MDOC, with ten years suspended, and he was ordered to pay a $5,000 fine, court costs, and $2,500 in restitution to the victim's family.

¶8. On appeal, Husband alleges errors involving a castle-doctrine jury instruction and the weight of the evidence. We find that the trial court's giving of Jury Instruction 7 on the castle doctrine, which applied to the victim and not the defendant, was reversible error. Therefore, we reverse and remand for a new trial consistent with this opinion. All remaining issues are rendered moot.

**DISCUSSION**

**Whether the giving of Jury Instruction 7 regarding the castle doctrine was prejudicial to Husband, as it shifted the burden of proof by establishing a presumption that the victim's actions were justified.**

¶9. At trial, the State submitted Jury Instruction 7, which provided:

The court instructs the jury that if you find from the evidence in this case beyond a reasonable doubt that, on or about November 15, 2013, . . . Crenshaw was an inhabitant, occupant, and resident of the dwelling house at 1275 Highway 13 South, Marion County, Mississippi, then you should presume . . . . Crenshaw was entitled, under the law, to use whatever force or weaponry that would have been reasonably necessary for him to meet and repel any attack upon himself and the other inhabitants of the residence, which may have been mounted or caused by the defendant, . . . Husband.

The trial judge gave this instruction over defense counsel's objection, noting that it "mirror[ed] a [c]astle doctrine." Husband contends that because the castle doctrine applies

4

"to the person who uses defensive force, not the person against whom force was used," and the State bears the burden to prove the defendant did not act in self-defense, this instruction improperly "shifted the burden of proof from the State to the defense because it allowed the jury to presume that Crenshaw's actions were reasonably necessary to meet whatever attack may have come from Husband."

¶10.    The State argues Husband has waived his right to bring this issue on appeal because his objection to the instruction at trial was on a different ground.  "To preserve a jury instruction issue on appeal, the defendant must make a specific objection to the proposed instruction to allow the trial court to consider the issue."  *Harris v. State*, 861 So. 2d 1003, 1013 (¶18) (Miss. 2003) (citing *Crawford v. State,* 787 So. 2d 1236, 1244-45 (¶35) (Miss. 2001)).  "Asserting grounds for an objection on appeal that differ from the ground given for the objection at the trial level does not properly preserve the objection for appellate review."  *Bursey v. State*, 149 So. 3d 532, 535 (¶5) (Miss. Ct. App. 2014) (quoting *Woodham v. State,* 779 So. 2d 158, 161 (¶12) (Miss. 2001)).  Husband's objection at trial was that Crenshaw was not entitled to the castle-doctrine instruction because he was not a resident of the home.[2]  Defense counsel reasoned, "There's absolutely . . . no established testimony that [Crenshaw is] entitled . . . to that instruction at all."  Thus, the State is correct; Husband asserted a different claim than what he is arguing on appeal, procedurally barring the issue from consideration on the merits.

¶11.    However, Husband responds that regardless of any procedural bar, this Court should

---

[2] Stokes rented the duplex, and she and Crenshaw had only been dating approximately one month prior to the shooting.

consider this issue for plain error. The plain-error doctrine requires a determination of "[whether] the trial court has deviated from a legal rule, whether that error is plain, clear or obvious, and whether the error has prejudiced the outcome of the trial." *Brown v. State*, 75 So. 3d 573, 577 (¶16) (Miss. Ct. App. 2011) (quoting *Cox v. State,* 793 So. 2d 591, 597 (¶22) (Miss. 2001)). "For the plain-error doctrine to apply, there must have been an error that resulted in a manifest miscarriage of justice or seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." *Rodgers v. State*, 166 So. 3d 537, 544 (¶15) (Miss. Ct. App. 2014) (quoting *Conners v. State,* 92 So. 3d 676, 682 (¶15) (Miss. 2012)).

¶12.    Mississippi Code Annotated 97-3-15(3) (Rev. 2014) provides:

> *A person who uses defensive force* shall be presumed to have reasonably feared imminent death or great bodily harm, or the commission of a felony upon him or another or upon his dwelling, or against a vehicle which he was occupying, or against his business or place of employment or the immediate premises of such business or place of employment, *if the person against whom the defensive force was used*, was in the process of unlawfully and forcibly entering, or had unlawfully and forcibly entered, a dwelling, occupied vehicle, business, place of employment or the immediate premises thereof or if that person had unlawfully removed or was attempting to unlawfully remove another against the other person's will from that dwelling, occupied vehicle, business, place of employment or the immediate premises thereof and the person who used defensive force knew or had reason to believe that the forcible entry or unlawful and forcible act was occurring or had occurred. *This presumption shall not apply if the person against whom defensive force was used has a right to be in or is a lawful resident or owner of the dwelling*, vehicle, business, place of employment or the immediate premises thereof or is the lawful resident or owner of the dwelling, vehicle, business, place of employment or the immediate premises thereof or if the person who uses defensive force is engaged in unlawful activity or if the person is a law enforcement officer engaged in the performance of his official duties[.]

(Emphasis added). Husband argues that applying the castle-doctrine presumption to the victim, Crenshaw, "[a]llow[ed] the jury to presume that [Crenshaw] was entitled to use

whatever force was necessary to meet or repel an attack from Husband [and] obviate[d] the need for the State to prove that Husband did not act in self-defense." We agree. While we find no instance in Mississippi where a castle-doctrine instruction has been given in regard to the victim's being granted the statute's mandatory rebuttable presumption, it is evident from our statute's language that such an instruction is patently inappropriate. The statute clearly indicates that the rebuttable presumption is granted to the defendant, not the victim.

¶13. The Arizona Court of Appeals has addressed this precise issue and reached the same conclusion regarding its statute. In *State v. Abdi*, 248 P.3d 209, 211 (Ariz. Ct. App. 2011), the trial court instructed the jury on self-defense, but at the state's request, also gave an instruction on the castle doctrine, applying the instruction to the victim. Like Husband, the defendant in that case argued that the castle-doctrine instruction "created a mandatory presumption that [the victim] acted reasonably" and "this presumption 'lessened the state's burden of proving that Abdi was not acting in self-defense.'" *Id*. Although it noted that the Arizona statute used the term "[t]he person," which could apply to either a defendant or victim, the appellate court concluded that the historical background of the statute revealed the Arizona legislature's intent that the statute apply to "a defendant who is charged with using force in response to someone unlawfully entering [his] home." *Id*. at (¶8).[3] Therefore,

---

[3] Although our analysis has revealed no similar background history pertaining to the Mississippi Legislature's enactment of section 97-3-15(3) in 2006, the title to the Act (Senate Bill 2426) states that it is "to provide immunity *from criminal prosecution* under certain circumstances as they related to justifiable homicide[.]" (Emphasis added). While we acknowledge the title to the Act is not necessarily determinative of whether the act applies to a defendant or victim, we find it persuasive in our determination that applying the presumption in the statute to a victim is incompatible with the statute's intent to provide a defendant with an affirmative defense of justifiable homicide.

finding the jury instruction's language created a mandatory presumption and shifted the burden of proof, the Arizona appellate court held the trial court erred in giving the jury instruction. *Id*. at 212-14 (¶¶11-16).

¶14.    The United States Supreme Court has held:  "The Due Process Clause of the Fourteenth Amendment . . . . prohibits the State from using evidentiary presumptions in a jury charge that have the effect of relieving the State of its burden of persuasion beyond a reasonable doubt of every essential element of a crime." *Francis v. Franklin*, 471 U.S. 307, 313 (1985) (citing *Sandstrom v. Montana*, 442 U.S. 510, 520-524 (1979)).  In *Francis,* the Supreme Court concluded that a jury instruction that created a mandatory presumption with respect to the element of intent and shifted the burden of persuasion to the defendant, was unconstitutional. *Id*. at 315-18.

> An irrebuttable or conclusive presumption relieves the State of its burden of persuasion by removing the presumed element from the case entirely if the State proves the predicate facts. A mandatory rebuttable presumption does not remove the presumed element from the case if the State proves the predicate facts, but it nonetheless relieves the State of the affirmative burden of persuasion on the presumed element by instructing the jury that it must find the presumed element unless the defendant persuades the jury not to make such a finding. A mandatory rebuttable presumption is perhaps less onerous from the defendant's perspective, but it is no less unconstitutional.

*Id*. at 317.  Examining *Francis* and *Sandstrom*, our supreme court held in *Williams v. State*, 111 So. 3d 620, 626 (¶¶20, 22) (Miss. 2013), that a jury instruction that "created a mandatory presumption which could allow a conviction based upon a presumption[,] as opposed to evidence beyond a reasonable doubt," constituted reversible error.

¶15.    Regarding a defendant's affirmative self-defense claim, the supreme court held in

8

*Sloan v. State*, 368 So. 2d 228, 229 (Miss. 1979):

> The burden of proof in a criminal case never shifts from the State to the defendant. The State is required to prove every material element of the indictment beyond reasonable doubt. Likewise, the defendant is not required to prove that he acted in self-defense, and, if a reasonable doubt of his guilt arises from the evidence, including evidence of self-defense, he must be acquitted.

Therefore, "[i]t remains the burden of the State to prove beyond a reasonable doubt that the defendant was not acting in self-defense." *Johnson v. State*, 749 So. 2d 369, 374 (¶19) (Miss. Ct. App. 1999) (citing *Heidel v. State,* 587 So. 2d 835, 843 (Miss. 1991)). "A successful self-defense argument requires that the jury believe that it was objectively reasonable for the defendant to believe he was in danger of imminent death or serious bodily harm." *Davis v. State*, 158 So. 3d 1190, 1194 (¶15) (Miss. Ct. App. 2015) (quoting *Wilder v. State,* 118 So. 3d 628, 631 (¶9) (Miss. Ct. App. 2012)). "[S]o long as the evidence, fairly considered, leaves the jury with a reasonable doubt as to whether the defendant was acting in necessary self-defense, the jury's obligation under the law is to return a verdict of not guilty." *Carter v. State*, 858 So. 2d 212, 215 (¶5) (Miss. Ct. App. 2003) (citing *Sloan,* 368 So. 2d at 229).

¶16.    Jury Instruction 9 provided the elements of self-defense and stated that the State bore the burden to prove beyond a reasonable doubt that Husband was not acting in self-defense. However, when reading the jury instructions as a whole, we find the mandatory rebuttable presumption afforded to Crenshaw in Jury Instruction 7 was in direct conflict with the State's burden to prove that Husband was not acting in self-defense. Under that instruction, Crenshaw was entitled to use reasonably necessary force to repel an attack by Husband.

9

"Even when viewed in the context of all the instructions given, a reasonable juror could have interpreted the challenged instruction to create a presumption that lessened the state's burden of proof and required rebuttal evidence from the defendant to overcome." *See Abdi*, 248 P.3d at 213 (¶15). Thus, we conclude that it was plain error for the trial court to give this instruction, as it was a clear misapplication of the law and prejudicial to Husband's self-defense claim. *See Abdi*, 248 P.3d at 214 (¶17) (concluding that when the defendant's core defense was justification, a jury instruction that created a presumption that the victim acted reasonably was not harmless error and warranted a vacation of his conviction).

¶17. We also reject the State's alternative argument that Jury Instruction 7 "was not actually a castle doctrine instruction." The record shows that when the prosecution submitted the jury instruction to the trial court, it noted: "So we think the [c]astle doctrine is appropriate in this case." Later, during closing arguments, the prosecutor also highlighted for the jury the elements contained in Jury Instruction 7:

> [Crenshaw is] entitled to what's called the [c]astle doctrine in Mississippi. The [c]astle doctrine is – which I'm going to read through in a minute. Basically it means that you can defend your home, you can defend your family or relatives in your home from an attack by someone else.
>
> . . . .
>
> You should presume . . . Crenshaw was entitled under the law to use whatever force or weaponry that would have been reasonably necessary for him to meet and repel any attack upon himself and the other inhabitants of the residence, which may have been mounted by or caused by the Defendant, . . . Husband.

The State clearly intended for Jury Instruction 7 to be a castle-doctrine instruction pertaining to Crenshaw, the victim.

¶18. Accordingly, we find that the circuit court committed reversible error in the giving of Jury Instruction 7, and we remand for a new trial.

¶19. The other issues on appeal were (1) whether the sufficiency and weight of the evidence were against the verdict and (2) whether trial counsel was ineffective for failing to submit a castle-doctrine jury instruction pertaining to Husband, as he was in his vehicle and unable to leave due to Crenshaw's standing inside his car's open door. Although we have found plain error in the giving of Jury Instruction 7, we will briefly address Husband's claim regarding the sufficiency of the evidence, as a finding for Husband on this claim would result in a reversal and rendering of the judgment in his favor. *See Newell v. State*, 175 So. 3d 1260, 1267 (¶5) (Miss. 2015) (stating that an argument regarding the sufficiency of the evidence should be addressed on appeal, even if the appellate court has determined the trial court committed an evidentiary error). We find that, had the jury been properly instructed, the State offered sufficient and credible evidence to support the verdict of "heat of passion" manslaughter. The evidence showed that the two men were engaged in a heated argument, with Crenshaw's holding a gun and preventing Husband from leaving during the altercation. Further, Crenshaw was shot in the back, presumably retreating from Husband's firing of the gun. Husband's argument that the evidence was insufficient is also based on his claim he was entitled to a castle-doctrine instruction; however, no such instruction was requested. As to Husband's ineffective-assistance-of-counsel claim, our supreme has held that if a case is reversed on other grounds, a claim of ineffective assistance is moot. *Deloach v. State*, 977 So. 2d 400, 404 (¶17) (Miss. Ct. App. 2008) (citing *Read v. State,* 430 So. 2d 832, 841 (Miss.

11

1983)).

¶20.  **THE JUDGMENT OF THE CIRCUIT COURT OF MARION COUNTY IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.  ALL COSTS OF THIS APPEAL ARE ASSESSED TO MARION COUNTY.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, CARLTON, FAIR, JAMES AND GREENLEE, JJ., CONCUR.  WILSON, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**