Filed 2/25/13  P. v. Sepulveda CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>RAYMOND TORRES SEPULVEDA,<br><br>    Defendant and Appellant. | F063559<br><br>(Super. Ct. No. MCR038366)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Madera County.  Dale J. Blea, Judge.

Aaron Williams for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Caely E. Fallini, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Raymond Torres Sepulveda was convicted in Count 1 of possession of methamphetamine while armed with a loaded operable firearm (Health & Saf. Code, § 11370.1, subd. (a)) and in Count 2 of possession of ammunition (Pen. Code, § 12316,

subd. (b)(1)).[1]  It was further found true as to Count 2 that Sepulveda was prohibited from owning or possessing a firearm because of previous felony convictions (§§ 12021, 12021.1; Welf. & Inst. Code, §§ 8100, 8103).  The trial court sentenced Sepulveda to a total term of two years in state prison.

On appeal, Sepulveda alleges numerous instances of ineffective assistance of counsel; that the prosecutor impermissibly commented on his postarrest silence; and that there was insufficient evidence of a "usable amount" to support the possession of methamphetamine conviction in Count 1.  We disagree and affirm.

## STATEMENT OF THE FACTS

At about midnight on June 13, 2010, police officers Jason Gutknecht and Michael Kutz were in an unmarked police vehicle when they observed a truck with the bed filled with televisions and furniture, parked in a high crime area.  The officers approached the truck and observed Martin Rodriguez (Martin) sitting in the driver's seat of the truck.  Gutknecht knew from information given him by confidential informants that Martin sold methamphetamine and at all times carried a loaded firearm.

Within seconds of when he first saw the truck, Officer Gutknecht exited his vehicle, as did Martin, and they contacted each other in the parking lot.  Gutknecht searched Martin's person, but did not find any contraband.  There were two other passengers in the truck: Martin's wife Lisa Rodriguez (Lisa) in the front seat and Sepulveda in the back behind the driver's seat.

Sepulveda exited the truck at Officer Gutknecht's request, consented to a search of his person, and spontaneously admitted he had a gun in his pocket.  Gutknecht then removed a loaded .22-caliber gun, wrapped in a white bandana, as well as a small baggie of methamphetamine from Sepulveda's right shirt pocket.  The officer also recovered 31

---

[1]     All further statutory references are to the Penal Code unless otherwise stated.

live .22-caliber bullets from the left shirt pocket. Gutknecht opined that the methamphetamine was a "usable amount," later determined to be .08 grams.

After Sepulveda was arrested, he spontaneously told Officer Gutknecht he had the gun for protection from his cousin and had bought it off "some wet back for $95." Gutknecht never advised Sepulveda of his *Miranda*[2] rights, and Sepulveda made no further statements regarding the incident during his transport to jail or while being booked into jail. Gutknecht was present with Sepulveda during this entire process.

Sepulveda testified in his own defense that, when Martin saw the unmarked police vehicle and determined it was law enforcement, Sepulveda, Martin, and Lisa were all outside the truck and all quickly got back into the truck. Martin then handed the gun, bullets, and bandana to Sepulveda and told him to take responsibility for them or Martin would have Sepulveda's daughter and sisters shot. Sepulveda estimated that this occurred within one or two minutes after they got into the truck. Sepulveda maintained that he was unaware that Martin had handed him methamphetamine as well.

Sepulveda testified that Martin told him he was a "three striker" with "nothing to lose," and if Martin went to jail, he would have someone "deal with" Sepulveda's sisters. Although Sepulveda acknowledged that he told the officer he bought the gun in the alleyway by the Johnny Quik for protection from his cousin, he claimed at trial that he took the gun because he was scared for his family. Sepulveda testified that Martin had previously told him about a lot of "pretty scary" things he had done. Sepulveda had also seen Martin previously threaten a child with a gun.

Sepulveda admitted that he had a prior conviction for possession of methamphetamine 10 years earlier, and that he pled guilty in the prior case because he was guilty. But Sepulveda insisted that he was innocent in the instant case.

---

[2]    *Miranda v. Arizona* (1966) 384 U.S. 436.

3.

Lisa, Martin's wife, was called by the defense and testified that she was with Martin the entire night in question and never heard him threaten Sepulveda, nor did she see Martin with a gun or drugs. According to Lisa, the windows on the truck were not tinted; the truck was backing up when the officers approached; Sepulveda claimed responsibility for the gun "like four times" to the officers; and she saw the methamphetamine and gun retrieved from different pockets on Sepulveda's person.

The defense recalled Officer Gutknecht, who testified that Martin's truck did have tinted windows, the truck was parked and not backing up when the officers approached, Sepulveda claimed responsibility for the gun only once, and the methamphetamine and gun were retrieved from the same pocket on Sepulveda's shirt.

## DISCUSSION

### I. INEFFECTIVE ASSISTANCE OF COUNSEL

Sepulveda asserts numerous instances of ineffective assistance of counsel in association with the preparation and presentation of his case. He claims his trial counsel was ineffective for (1) insisting the jury be informed Sepulveda had previously been convicted of possession of methamphetamine; (2) for telling the jury during opening statement that Martin would be testifying for the defense; (3) for calling Lisa as a witness to impeach Sepulveda; (4) for failing to corroborate Sepulveda's testimony; (5) for failing to call law enforcement officers who would provide circumstantial evidence that Martin owned a gun; (6) for failing to seek the identity of the confidential informants who had exculpatory information and for failing to have them testify; (7) for failing to move to have the possession of methamphetamine while armed charge dismissed; and (8) cumulative error. We will address each of these issues in turn.

To prevail on such claims, Sepulveda must establish not only deficient performance, i.e., representation below an objective standard of reasonableness, but also resultant prejudice. (*People v. Bolin* (1998) 18 Cal.4th 297, 333; *People v. Ledesma* (1987) 43 Cal.3d 171, 216.) Tactical errors are generally not deemed reversible, and

4.

counsel's decisionmaking must be evaluated in the context of the available facts. (*Strickland v. Washington* (1984) 466 U.S. 668, 690 (*Strickland*).) To the extent the record on appeal fails to disclose why counsel acted or failed to act in the manner challenged, we will affirm the judgment "unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation ...." (*People v. Pope* (1979) 23 Cal.3d 412, 426, overruled on other grounds in *People v. Berryman* (1993) 6 Cal.4th 1048, 1081, fn. 10, overruled on other grounds in *People v. Hill* (1998) 17 Cal.4th 800, 823, fn. 1.) Finally, prejudice must be affirmatively proved; the record must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Strickland, supra,* at p. 694; *People v. Ledesma, supra,* at pp. 217-218.) Using these standards, we conclude Sepulveda's ineffectiveness claims fail.

A. <u>Stipulating to a Past Methamphetamine Possession Conviction</u>

Sepulveda asserts first that counsel was ineffective for stipulating to the fact that he had a prior conviction for possession of methamphetamine.

Sepulveda was charged in Count 2 with possession of ammunition by a person prohibited from possessing a firearm due to a prior conviction, pursuant to then section 12316, subdivision (b)(1). In order to prove that count, the People were required to establish that Sepulveda had a prior felony conviction. (CALCRIM No. 2591.) The parties and trial court had numerous conversations on the issue of a stipulation as to the prior conviction allegation. The trial court suggested that the stipulation state only that Sepulveda had a prior felony conviction without stating what the nature of the conviction was. However, concerned that the jury would negatively speculate on an unspecified prior felony, defense counsel insisted that the stipulation specify that Sepulveda had a prior felony conviction for possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)). The trial court then read the stipulation, which stated that Sepulveda

5.

had "suffered a felony conviction for possession of methamphetamine on December 22nd, 2000," to the jury during the People's case-in-chief.

As is evident from defense counsel's opening statement, Sepulveda's defense at trial was that he was forced to take the gun and drugs from Martin, who threatened him. To this end, defense counsel told the jury that Sepulveda was familiar with "the system" since he had a prior methamphetamine related felony conviction and that, if he was trying to hide the drugs, he knew better than to put them in his front pocket. According to defense counsel, "[Sepulveda] knows that if you want to hide your drugs, you put it in your underwear, you put it somewhere that the cops will not find it." Sepulveda himself testified that he had a prior conviction for possessing methamphetamine and that he was guilty in the prior case, but that he was innocent in the instant case and wanted "everyone to know it."

In addition, because defense counsel was aware that Sepulveda's prior conviction for possession of methamphetamine would be admissible under Evidence Code section 1101, subdivision (b) as to Count 1, possession of methamphetamine while armed with a firearm, she knew the jury would hear about the conviction regardless. But by stipulating to this same conviction as Sepulveda's qualifying felony conviction for Count 2, the jury would be unaware Sepulveda had two additional qualifying convictions. In addition, the jury had no reason to speculate that the felony conviction was for something arguably more serious.

Here, defense counsel had several tactical reasons for stipulating that Sepulveda's prior felony was related to methamphetamine, and we afford it great deference. (*People v. Jones* (2003) 29 Cal.4th 1229, 1254.) "[C]ourts should not second-guess reasonable, if difficult, tactical decisions in the harsh light of hindsight." (*People v. Scott* (1997) 15 Cal.4th 1188, 1212.) We will reverse a conviction on the ground of inadequate counsel "only if the record on appeal affirmatively discloses that counsel had no rational tactical

6.

purpose for his act or omission." (*People v. Fosselman* (1983) 33 Cal.3d 572, 581.) Thus, this was a tactical decision requiring no reversal.

    *B.* Informing the Jury Martin would Testify

Sepulveda next contends that counsel was ineffective because she made the promise in opening statement that Martin would testify and she should have known that, if he was called, he would invoke his right not to incriminate himself.

During her opening statement, defense counsel informed the jury that she subpoenaed Martin to testify at trial so the jury "can hear his testimony … and determine for [themselves] whether he is credible or not." Martin later testified in an evidentiary hearing outside the presence of the jury, in which he invoked his Fifth Amendment right and refused to answer any questions regarding his personal possession of drugs or guns, anything related to Sepulveda, or the incident in which Sepulveda was arrested. The trial court then ruled that the limited information Martin was willing to testify to was irrelevant and/or precluded under Evidence Code section 352. Martin did not testify before the jury.

"Whether the failure to produce a promised witness amounts to ineffective assistance of counsel is a fact-based determination that must be assessed on a case-by-case basis." (*People v. Stanley* (2006) 39 Cal.4th 913, 955.) In addition, counsel's decisionmaking must be evaluated in the context of the available facts. (*People v. Bolin, supra,* 18 Cal.4th at p. 333.)

Sepulveda's defense was that the methamphetamine, firearm, and bullets found on him were handed to him by Martin as the police approached, and that Martin threatened him if he did not cooperate. It is not entirely unreasonably for defense counsel to have believed that Martin could testify about relevant information that would not necessarily implicate Sepulveda but would, perhaps, corroborate details he would be testifying to.

We apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. (*Strickland, supra,* 466 U.S. at p.

689.)  Under this standard, Sepulveda fails to establish that counsel's performance fell below an objective standard of reasonableness by suggesting during opening statement that Martin would testify during trial.  (*Id.* at p. 688.)

Even were we to conclude defense counsel's failure to present the witness and testimony described in her opening statement fell below an objective standard, it is not reasonably probable that "but for" counsel's error, the result of the proceeding would have been different.  (*Strickland, supra,* 466 U.S. at p. 694.)  Sepulveda's defense at trial was not predicated on Martin assuming responsibility for the contraband, but rather the jury finding Sepulveda to be credible and believing his testimony, which it did not do.

Further, any error was cured by the special instruction given by the trial court which directed the jury as follows:

> "The fact that Martin … did not testify during this trial is not evidence.  Do not speculate about the reason.  You must completely disregard the circumstance in deciding the issues in this case.  Do not consider it for any purpose or discuss it during your deliberations."

Jurors are presumed to follow the court's admonitions and instructions.  (*Romano v. Oklahoma* (1994) 512 U.S. 1, 13; *People v. Harris* (1994) 9 Cal.4th 407, 426.)

C.  Calling Lisa as a Witness

Sepulveda next contends defense counsel was ineffective when it called Lisa as a witness because her testimony, in essence, "destroy[ed]" Sepulveda's defense.

Lisa testified that, on the night of the incident, she and her husband Martin were in the process of moving and were parked in a parking lot in the truck with Sepulveda.  Lisa testified that the windows of the truck were not tinted and that the truck was backing up when they saw the officers.  Lisa claimed Martin did not have a gun or drugs that night, and he never threatened Sepulveda.  She also testified that she did not know Sepulveda had any drugs on him and that she had not seen Sepulveda with a gun prior to him being searched.  Lisa testified that she heard Sepulveda say "like four times," when he was searched, that it was his gun.  According to Lisa, the drugs, gun and bullets were all

8.

found in different pockets: the drugs in Sepulveda's shirt pocket, and the gun and bullets from his two pant pockets.

"[T]he choice of which, and how many, of potential witnesses [to call] is precisely the type of choice which should not be subject to review by an appellate court." (*People v. Floyd* (1970) 1 Cal.3d 694, 709, overruled on other grounds by *People v. Wheeler* (1978) 22 Cal.3d 258, 287, fn. 36, overruled on other grounds in *Johnson v. California* (2005) 545 U.S. 162, 165.)  If the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged, unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation, the claim on appeal must be rejected. (*People v. Wilson* (1992) 3 Cal.4th 926, 936.)  Such claims are more appropriately addressed in a habeas corpus proceeding.  (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266-267.)

Here, defense counsel announced her intention to have Lisa testify after Martin asserted his right not to implicate himself.  Sepulveda had asserted, from the very beginning, that he was determined to testify.  Defense counsel may have believed that it was in Sepulveda's best interest to call Lisa to corroborate details that Sepulveda would testify to.

But even if we determine that defense counsel erred by calling Lisa, the error did not prejudicially damage Sepulveda.  An abundance of evidence, apart from Lisa's testimony, confirmed Sepulveda's convictions.  He was found with a loaded gun, ammunition, and a usable amount of methamphetamine on his person, he had a prior felony conviction, and he had no credible explanation for why he possessed these items.

In addition, any damage caused by Lisa was mitigated by recalling Officer Gutknecht, who impeached Lisa's testimony on the condition of the truck windows, the number of times Sepulveda claimed responsibility of the gun, and the location of the contraband.  According to Gutknecht, the truck was stationary when officers approached;

the drugs and gun were pulled out of the same pocket; and Sepulveda claimed ownership of the gun only once.

We cannot say that, but for defense counsel's error in calling Lisa as a witness, the result of the proceedings would have been different. (*Strickland, supra,* 466 U.S. at p. 694.)

### D. Declining to Corroborate Martin's Three Striker Status

Sepulveda also contends that defense counsel was ineffective for failing to corroborate his testimony that Martin was a third striker facing life in prison if he were caught with the gun and drugs. Sepulveda had testified that when the officers arrived, Martin handed him the gun, ammunition, and drugs and told him he was to take responsibility for them because Martin was a "three striker" and, if he went to jail, Sepulveda's daughter and sisters would be shot. Sepulveda contends that defense counsel could have corroborated Martin's status as a third striker "through easily obtained paperwork."

The record on appeal contains no information on what, if any, criminal convictions Martin had or whether defense counsel made any efforts to procure such information. From this record, we cannot determine whether defense counsel's performance was incompetent based on these omissions. (*People v. Wilson, supra,* 3 Cal.4th at p. 936.)

Even if we are to assume error, we cannot say that Sepulveda was prejudiced by the omission. The evidence against Sepulveda was strong. And while documentary evidence that Martin was a "three striker" may have corroborated one matter Sepulveda testified to, we cannot say that, but for this error, the result of the proceeding would have been different. (*Strickland, supra,* 466 U.S. at p. 694.)

### E. Failure to Introduce Evidence of Gun Box at Martin's Apartment

Sepulveda next contends that defense counsel was ineffective for failing to introduce evidence that officers found an empty gun box in Martin's apartment one month before the current incidence.

10.

During the preliminary hearing, Officer Gutknecht testified that, a month prior to Sepulveda's arrest, there had been a shooting at an apartment complex just south of where Martin lived. After a witness described Martin as being involved, officers searched Martin's apartment and located an empty, nondescript gun box, but no gun.

There is no evidence in the record why defense counsel did not introduce evidence of the empty gun box at trial. Neither is there any evidence of whether the gun box was of any relevance to the instant case. As such, we cannot determine that defense counsel's representation concerning this omission was below an objective standard of reasonableness. (*Strickland, supra,* 466 U.S. at p. 688.)

Even if we are to assume error, we cannot say such error prejudiced Sepulveda. The jury heard testimony that Martin carried a gun, had been involved in a shooting, and had been seen threatening a child with his gun. As such, it is not reasonably probable that, but for the additional fact that Martin had an empty gun box at his apartment one month earlier, the result of the proceeding would have been different. (*Strickland, supra,* 466 U.S. at p. 688.)

F. <u>Failure to Seek the Identity of Informants and Have Them Testify</u>

Sepulveda next contends that defense counsel was ineffective for failing to seek the identity of the confidential informants and for failing to have those informants testify about the fact that they knew Martin at all times to carry a gun and methamphetamine.

Prior to trial, the District Attorney informed defense counsel that there was more than one confidential informant who had information that Martin carried a gun at all times and was selling methamphetamine. Sepulveda argues that counsel should have pursued the identity of the confidential informants to bolster his theory of the case at trial, namely that the gun and drugs belonged to Martin. According to Sepulveda, although counsel requested that she be allowed to present hearsay evidence through the officer who was aware of the informant's information, she did not properly bring a motion to discover the identity of the confidential informants.

11.

"'""The common-law privilege of nondisclosure [of the identity of an informer] is based on public policy. 'The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation.' [Citation.] The informer is thus assured of some protection against reprisals. The use of informers is particularly effective in the enforcement of sumptuary laws such as those directed against gambling, prostitution, or the sale and use of liquor and narcotics…." [Citation.]' [Citation.]" (*People v. Otte* (1989) 214 Cal.App.3d 1522, 1529.)

Nonetheless, "the prosecution must disclose the name of an informant who is a material witness in a criminal case or suffer dismissal of the charges against the defendant. [Citation.] An informant is a material witness if there appears, from the evidence presented, a reasonable possibility that he or she could give evidence on the issue of guilt that might exonerate the defendant. [Citation.] The defendant bears the burden of adducing "'"some evidence"'" on this score." (*People v. Lawley* (2002) 27 Cal.4th 102, 159.)

"[T]hird party culpability evidence is admissible if it is 'capable of raising a reasonable doubt of [the] defendant's guilt,' .…" (*People v. Robinson* (2005) 37 Cal.4th 592, 625.) "[W]e do not require that *any* evidence, however remote, must be admitted to show a third party's possible culpability." (*People v. Hall* (1986) 41 Cal.3d 826, 833, italics added.) "[E]vidence of mere motive or opportunity to commit the crime in another person, without more, will not suffice to raise a reasonable doubt about a defendant's guilt .…" (*Ibid.*) "[T]o be admissible, evidence of the culpability of a third party offered by a defendant to demonstrate that a reasonable doubt exists concerning his or her guilt, must link the third person either directly or circumstantially to the actual perpetration of the crime. In assessing an offer of proof relating to such evidence, the court must decide whether the evidence could raise a reasonable doubt as to defendant's guilt and whether it is substantially more prejudicial than probative under Evidence Code section 352."

(*People v. Bradford* (1997) 15 Cal.4th 1229, 1325; see also *Hall, supra,* 41 Cal.3d at p. 834 [courts should simply treat third-party culpability evidence like any other evidence; if relevant it is admissible unless its probative value is substantially outweighed by the risk of undue delay, prejudice, or confusion].)

Sepulveda argues that the informants would have testified that Martin carried a gun on his person at all times and that he was selling methamphetamine. But even if that was the case, it cannot be said that, but for counsel's failure to request such a motion, the result of the proceeding would have been different. (*Strickland, supra,* 466 U.S. at p. 694.) The evidence strongly confirmed Sepulveda's guilt. Sepulveda was not prevented from presenting his defense-- that the gun and drugs were forced on him by Martin. The jury heard, through Officer Gutknecht's testimony, that Martin sold methamphetamine and that he always carried a gun, the very same evidence that Sepulveda claims the informants would have testified to.

G. Failure to Make a Section 1118.1 Motion on Count 1

Sepulveda next contends that counsel was ineffective for failing to make a section 1118.1 motion for acquittal on Count 1. Count 1 charged Sepulveda with possession of methamphetamine while armed with a firearm in violation of Health and Safety Code, section 11370.1, subdivision (a). Among other elements, the prosecution was required to prove that there was a usable amount of methamphetamine. (*People v. Rubacalba* (1993) 6 Cal.4th 62, 65-67; CALCRIM No. 2303.)

As argued by Sepulveda, the evidence of a usable amount was provided by Officer Gutknecht, who testified that the methamphetamine and its packaging together totaled three-tenths of a gram and that anything over one-tenth of a gram is a usable amount, but that Gutknecht never testified to and was never asked how much methamphetamine was possessed absent the packaging. A criminalist testified that the methamphetamine alone weighed eight one-hundredth of a gram, an amount Sepulveda argues is below a usable amount.

But as noted by respondent, Officer Gutknecht did not testify that anything *over* one-tenth of a gram was a usable amount, but rather "anything *less* than one tenth of a gram would be a usable amount," (italics added) because that amount can be used in a glass smoking device, snorted, or injected. In this case, the net weight of the methamphetamine was .08 grams, and was therefore a usable amount. There was therefore sufficient evidence of a usable amount of methamphetamine to support a conviction in Count 1 and any motion by counsel for acquittal would have been denied.[3] "Counsel is not ineffective for failing to make a frivolous motion." (*People v. Weaver* (2001) 26 Cal.4th 876, 931.)

### H. Cumulative Ineffective Assistance of Counsel

Finally, Sepulveda contends that he was deprived of his right to effective assistance of counsel through counsel's errors, both individual and cumulative. However, having found no ineffective assistance in any of the individual claims of error, we necessarily reject his claim of cumulative error. (*People v. Gurule* (2002) 28 Cal.4th 557, 662.)

## II. PROSECUTORIAL MISCONDUCT

Sepulveda contends that the prosecutor's comments on his postarrest silence infringed his right to silence in violation of *Doyle v. Ohio* (1976) 426 U.S. 610 (*Doyle*) and *People v. Coffman and Marlow* (2004) 34 Cal.4th 1 (*Coffman*). Specifically, Sepulveda contends that the prosecutor's argument to the jury constituted error because it implied that, if his defense was true, he would have come forward with that information when he was arrested. We disagree. Because we dispose of this argument on the merits,

---

[3] Sepulveda makes a separate argument that there was insufficient evidence he possessed a usable amount of methamphetamine to support his conviction in Count 1. Because we have addressed the issue in context of his argument here, we need not address it again.

we need not address the People's assertion that the failure of defense counsel below to object to the questions and commentary waived the issue for appeal.

A.  Procedural Background

When Sepulveda exited the truck at Officer Gutknecht's request, he consented to a search of his person and spontaneously admitted he had a gun in his pocket. After Sepulveda was arrested, he spontaneously told Officer Gutknecht he had the gun for protection from his cousin and had bought it "off some wet back for $95." Gutknecht never advised Sepulveda of his *Miranda* rights, and Sepulveda made no further statements regarding the incident during his transport to jail or while being booked into jail. Gutknecht was present with Sepulveda during this entire process.

In defense counsel's opening statement, Sepulveda's defense was that he was in possession of the firearm, ammunition and methamphetamine because Martin threatened him if he did not take the items and claim them as his own when officers approached.

The testimony of Officers Gutknecht and Kutz during the people's case-in-chief established that Sepulveda spontaneously claimed ownership of the gun, but that he made no other statements. Defense counsel initially objected during Gutknecht's testimony for "[l]ack of personal knowledge," which was overcome once the People established that Gutknecht was with Sepulveda after he was arrested. Defense counsel made no further objections.

During her cross-examination of Officers Gutknecht and Kutz, defense counsel asked whether Sepulveda had said, at the time of booking that "he need[ed] to talk to someone about the incident." Both replied in the negative. On direct examination, defense counsel asked Sepulveda to explain his postarrest silence, and he explained that he still felt threatened by Martin, but that he eventually told a booking officer "everything." The prosecutor cross-examined him regarding his silence as well as his claim that he had spoken to a booking officer, whose name Sepulveda could not remember. Both the prosecutor and defense counsel addressed Sepulveda's postarrest,

15.

pre-*Mirandized* silence during closing arguments: the prosecutor questioning why Sepulveda did not say anything about the gun belonging to Martin, and defense counsel explaining that Sepulveda felt threatened.

B.  Applicable Law and Analysis

In *Doyle,* the United States Supreme Court held that "the use for impeachment purposes of petitioners' silence, at the time of arrest and after receiving *Miranda* warnings, violated the Due Process Clause of the Fourteenth Amendment."  (*Doyle, supra,* 426 U.S. at p. 619.)  "*Doyle* holds that the prosecution may not, consistent with due process and fundamental fairness, use postarrest silence following *Miranda* warnings to impeach a defendant's testimony at trial."  (*Coffman, supra,* 34 Cal.4th at p. 118.)  In other words, once an accused has been given the *Miranda* warnings, the accused's post-*Miranda* silence may not be used to impeach an explanation subsequently offered at trial. (*Doyle, supra,* at pp. 619-620; *People v. Medina* (1990) 51 Cal.3d 870, 890; *People v. O'Sullivan* (1990) 217 Cal.App.3d 237, 244.)

In *Fletcher v. Weir* (1982) 455 U.S. 603 (*Fletcher*), the court addressed the admissibility of a defendant's postarrest, pre-*Miranda* silence to impeach his trial testimony.  The court rejected the extension of *Doyle* to such a situation, and clarified that *Doyle* applied only when *Miranda* warnings have first been given because the silence induced by *Miranda* warnings implicitly assured the defendant that his silence would not be used against him.  (*Fletcher, supra,* at pp. 605-607.)  But *Doyle* is not violated when a defendant testifies and is cross-examined about his postarrest silence, where no *Miranda* warnings had been given following the arrest.  (*Fletcher, supra,* at p. 607.)

> "In the absence of the sort of affirmative assurances embodied in the *Miranda* warnings, we do not believe that it violates due process of law for a State to permit cross-examination as to postarrest silence when a defendant chooses to take the stand.  A State is entitled, in such situations, to leave to the judge and jury under its own rules of evidence the resolution of the extent to which postarrest silence may be deemed to impeach a criminal defendant's own testimony."  (*Fletcher, supra,* 455 U.S. at p. 607.)

Both the defendant's pre-*Miranda*, pre- and postarrest silence is admissible to impeach his or her trial testimony. (*Fletcher, supra,* 455 U.S. at p. 607; *Jenkins v. Anderson* (1980) 447 U.S. 231, 238; *People v. Earp* (1999) 20 Cal.4th 826, 856-857; *People v. Delgado* (1992) 10 Cal.App.4th 1837, 1842.)

Here Sepulveda testified at trial and denied the charges, he was therefore properly impeached with evidence of his postarrest silence because the silence occurred without being given *Miranda* warnings. (*Fletcher, supra,* 455 U.S. at p. 607; *People v. Earp, supra,* 20 Cal.4th at p. 856; *People v. Delgado, supra,* 10 Cal.App.4th at pp. 1842-1843.) Any arguable error on the part of the prosecution in introducing evidence of Sepulveda's postarrest, pre-*Miranda* silence in its case-in-chief before Sepulveda testified is harmless beyond a reasonable doubt in light of his later trial testimony. (*Champan v. California* (1967) 386 U.S. 18, 24; *People v. Crandell* (1988) 46 Cal.3d 833, 879.)

## DISPOSITION

The judgment is affirmed.

_____
Franson, J.

WE CONCUR:


_____
Kane, Acting P.J.


_____
Poochigian, J.

17.