JORDAN, Circuit Judge,
concurring, in which WALKER, Circuit Judge, joins:
As the court explains, United States v. Rivera, 944 F.2d 1563, 1568 (11th Cir. 1991), allows the government, in its casein-chief at trial, to use the post-arrest/pre-Miranda[1] silence of a defendant as substantive evidence of guilt. We are bound by Rivera, but its reading of the Fifth Amendment is misguided and should be reconsidered en banc in an appropriate case.
[[Image here]]
Just before midnight on May 3, 2014, about 25 nautical miles from Haiti, Coast Guard officers approached Nathaniel Rolle’s boat with their firearms drawn. The officers ordered the boat’s occupants, including Mario Wilehcombe and Alteme Beauplant, to get on their knees with their hands behind their heads (and later with their hands on the gunnel of the boat). The officers also told the men on the boat that they were not free to move around and made it clear to them that they “had no intent on having a conversation .at that point.” D.E. 175 at 333.
Several hours later, after the Coast Guard had received authorization to board, and after the boat was searched, the officers put the occupants in leg irons and transferred them to a Coast Guard vessel. The occupants' were- told to write down their names, dates of birth, and nationalities on cards and were then photographed holding those cards.' After about two to three days, the occupants, still shackled, were taken to a second Coast Guard vessel. They arrived in Miami after five days at sea.
The Coast Guard officers never told Mr. Wilehcombe and Mr. Beauplant that it was permissible for them to speak, and did not give them Miranda warnings. Mr. Wil-ehcombe and Mr. Beauplant were not questioned by the officers, and aside from asking if they could have food and water, they did not speak (or ask to -speak) to the Coast Guard officers while at sea. While on the second Coast Guard vessel, Mr. Beau-plant told a Creole interpreter that he was from Haiti,- that he had been stranded on one of the islands, and that the Bahamians on the boat had offered him a ride home.
Mr. Wilehcombe and Mr.'-Beauplant did not testify at trial. The government, in its case-in-chief and over defense objection, elicited from several of the Coast Guard officers that 'Mr. Wilehcombe and Mr. Beauplant did not say anything to them while in custody aboard the Coast Guard vessels and that they did not ask to speak to any of the officers in private. The district court denied defense motions for mistrial based on the testimony pertaining to their post-arrest/pre-Mmmcto silence.
In its initial closing argument, the government argued to the jury that, had the *1194 two men not been involved in the drug-smuggling venture, they would have said something to the Coast Guard officers after they were arrested and while they were at sea. The government also returned to the post-arrest silence of Mr. Wilchcom-be and Mr. Beauplant in its rebuttal closing argument, telling the jury that, although the Coast Guard officers did not ask the men any questions, they were able to make statements if they wished, as shown by Mr. Beauplant’s conversation with the Creole interpreter.
[[Image here]]
About 50 years ago, the Supreme Court held that comments by the prosecution and instructions by the trial court on inferences which can be drawn from a defendant’s failure to testify at trial violate the Fifth Amendment, even if the jury is also instructed that a defendant has a constitutional right to not take .the stand in his own defense:
It is in substance a rule of evidence that allows the State a privilege of tendering to the jury for its consideration the fail- . ure of the accused to testify. No formal offer of proof is made as in other situations; but the prosecutor’s comment and the court’s acquiescence are the equivalent of an offer of evidence and its ac- . ceptance.
Griffin v. California, 380 U.S. 609, 613, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). The Court explained that “[cjomment on the refusal to testify is a remnant of the ‘inquisitorial system of criminal justice,’ which the Fifth Amendment outlaws.” Id. at 614, 85 S.Ct. 1229 (citation omitted). The Fifth Amendment, the Supreme Court concluded, “forbids either comment by the prosecution on the accused’s silence or instructions by the court that such silence is evidence of guilt.” Id. at 615, 85 S.Ct. 1229.
A decade later, the Supreme Court explained that “Griffin prohibits the judge and prosecutor from suggesting to the jury that it may treat the defendant’s silence as substantive evidence of guilt.” Baxter v. Palmigiano, 425 U.S. 308, 319, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976). So, “[wjhere the prosecutor, on his own initiative asks the jury to draw an adverse influence from a defendant’s silence, Griffin holds that the privilege against self-incrimination is violated.” United States v. Robinson, 485 U.S. 25, 32, 108 S.Ct. 864, 99 L.Ed.2d 23 (1988).[2]
As I see it, the government here did what the Fifth Amendment, as interpreted in Griffin, forbids. It elicited testimony about the post-arrest silence of Mr. Wil-chcombe and Mr. Beauplant in its case-in-chief, and then suggested to the jury in closing argument that their silence should be considered as substantive evidence of guilt.
Rivera, citing only to Fletcher v. Weir, 455 U.S. 603, 607, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982), held that “the government may comment on a defendant’s silence when it occurs after arrest, but before Miranda warnings are given,” Rivera, 944 F.2d at 1568. Fletcher, however, cannot bear the weight Rivera placed on it.
First, Fletcher was decided under the “fundamental fairness” standard of the *1195 Due Process Clause of the Fourteenth Amendment, and not under the Self-Incrimination Clause of the Fifth Amendment. See Fletcher, 455 U.S. at 607, 102 S.Ct. 1309. Due process (whether of the Fifth or Fourteenth Amendment varieties) and the privilege against self-incrimination (located in the Fifth Amendment) “are not coextensive, nor do they have the same underlying rationales. There is, therefore, no principled reason ... [for the] application of a due process analysis to an inquiry about the privilege against self-incrimination.” Maria Noelle Berger, Defining the Scope of the Privilege Against Self-Incrimination: Should Prearrest Silence be Admissible as Substantive Evidence of Guilt?, 1999 U. III. L. Rev. 1015, 1025.
Second, Fletcher addressed the use of silence to impeach a defendant during cross-examination, and not the use of silence in the government’s case-in-chief. It held that the due process clause—as interpreted in Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976)—permit-ted the use of post-arrest/pre-Mirawto silence on cross-examination of a defendant who took the stand at trial: “In the absence of the sort of affirmative assurance embodied in the Miranda warnings, we do not believe it violates due process of law for a State to permit cross-examination as to post[-]arrest silence when a defendant chooses to take the stand.” Fletcher, 455 U.S. at 607, 102 S.Ct. 1309. Later cases have explained that Fletcher was decided on due process grounds using a “fundamental fairness” standard. See, e.g., Wainright v. Winfield, 474 U.S. 284, 290, 106 S.Ct. 634, 88 L.Ed.2d 623 (1986) (“Since Fletcher ... we have continued to reiterate our view that Doyle rests on ‘the fundamental unfairness of implicitly assuring a subject that his silence will not be used against him and then using that silence to impeach an explanation offered at trial.’ ”) (citation omitted). Here, of course, we are not dealing with the use of silence for impeachment during a defendant’s’ cross-examination.
⅝ ⅜ ⅝ ⅝ ⅜ ⅝ ⅜ ⅜ ⅜
Although the Supreme Court has held that a voluntary custodial statement taken in violation of Miranda may be used on cross-examination to impeach a testifying defendant, the rationale for this rule is that a defendant who testifies at trial, and who places his credibility on the line, cannot use the Fifth Amendment as “a shield against contradictions of his untruths.” Harris v. New York, 401 U.S. 222, 224, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971) (citation and internal quotation marks omitted). See also id. at 226, 91 S.Ct. 643 (“The shield of Miranda cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances.”). Significantly, when evidence is offered in this manner, it is probative not of the defendant’s guilt but of his credibility. The two factual premises underlying the Harris rationale—(1) a defendant who makes a statement to the police, and (2) then testifies in a way that contradicts that statement—are missing here. Mr. Wilchcombe and Mr. Beauplant made no statements to the Coast Guard officers in the five days they were in custody, and did not testify at trial.
I agree with what Judge Sentelle wrote for the D.C. Circuit in holding that the Fifth Amendment prohibits the government from using post-arrest/pre-Miranda silence as substantive evidence of guilt in its case-in-chief:
[N]either Miranda nor any other ease suggests that a defendant’s protected right to remain silent attaches only upon the commencement of questioning as opposed to custody. While a defendant who chooses to volunteer an unsolicited ad *1196 mission or statement to the police before questioning may be held to have waived the protection of that right, the defendant who stands silent must be treated as having asserted it.
United States v. Moore, 104 F.3d 377, 385 (D.C. Cir. 1997).
If there is going to be a trigger for the constitutional protection of silence, that trigger should be custody and not the recitation of Miranda warnings. The right to remain silent comes from the Fifth Amendment, not Miranda, and exists independently of Miranda warnings. See United States v. Patane, 542 U.S. 630, 641, 124 S.Ct. 2620, 159 L.Ed.2d 667 (2004) (plurality opinion) (explaining that Miranda warnings “protect[ ]” the fundamental right secured by the Self-Incrimination Clause of the Fifth Amendment). Accordingly, “[i]t simply cannot be the case that a citizen’s protection against self-incrimination only attaches when officers recite a certain litany of his rights.” Moore, 104 F.3d at 385."
But if we Want to talk about Miranda, that decision contains broad language which supports the view that it is custody that matters when the issue is the use of a defendant’s silence as substantive evidence: “[I]t is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. The prosecution may not, therefore, use at .trial the fact that he stood mute or claimed his privilege in the face of an accusation.” Miranda, 384 U.S. at 468 n.37, 86 S.Ct. 1602.
' The'Court-in Miranda also made clear that the warning was just that: a warning that informs the suspect of the privilege against self-incrimination that he already possesses while in police custody and of the consequences of forgoing it. See id. at 469, 86 S.Ct. 1602 (“The warning of the right to remain silent must be accompanied by the explanation that anything said can and will be used against the individual in court. This warning is needed.in order to make him aware not only of the privilege, but also of the consequences of forgoing it. It is only through an awareness of these consequences that there can be any assurance of real understanding and intelligent exercise of the privilege. Moreover, this warning may serve to make the individual more acutely aware that he is faced with a phase of the adversary system— that he is not in the presence of persons acting solely in his interest.”). Nothing in Miranda suggests that the warning is the source of the right to remain silent. It thus makes no sense to conclude, as Rivera did, that whether a defendant possesses the privilege against self-incrimination is derived from issuance of the warning and not whether he is in custody. Even Justice Scalia, a critic of Griffin, viewed Miranda as a broad prohibition against the use of post-arrest silence by the government in its case-in-chief. See Mitchell, 526 U.S. at 338 n.2, 119 S.Ct. 1307 (“[W]e did say in Miranda ... that a defendant’s post-arrest silence could1 not be introduced as substantive evidence against him at trial.”).
[[Image here]]
In this case the Coast Guard officers chose not to give Miranda warnings to Mr. Wilehcombe and Mr. Beauplant while they were kept in shackles for five days at sea, and after they were told that the officers were not interested in having a conversation. In, my view, the Fifth Amendment’s privilege against self-incrimination did not permit the government to use the post-arrest silence of Mr. Wil-ehcombe and Mr. Beauplant—neither of whom testified at trial—as substantive evidence of their guilt in its case-in-chief. Cf. United States v. Hale, 422 U.S. 171, 176, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975) (federal case decided on evidentiary grounds: “In *1197 most circumstances silence is so ambiguous that it is of little probative force.”).
I join Judge Walker’s opinion for the court with the hope that, one day, we will revisit Rivera.[3]

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. I recognize that Griffin has its critics. See, e.g., Mitchell v. United States, 526 U.S. 314, 331, 119 S.Ct. 1307, 143 L.Ed.2d 424 (1999) (Scalia, J., dissenting); Albert Alschuler, “A Peculiar Privilege in Historical Perspective,” in The Privilege Against Self-Incrimination: Its Origins and Developments 199-202 (1997). But it also has its supporters. See, e.g., Akhil Reed Amar, The Constitution and Criminal Procedure: First Principles 52, 73-74 (1997); Stephen J. Shulhofer, Some Kind Words for the Privilege Against Self-Incrimination, 26 U. Va. L. Rev. 311, 330-35 (1991). More importantly for us, however, Griffin has not been overruled, and remains binding precedent.

. Given the other evidence presented against Mr. Wilchcombe and Mr. Beauplant, I do not think this case is a good vehicle for en banc reconsideration of Rivera.